## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**STEVE MILLER, ET AL.**                               **CIVIL ACTION**

**VERSUS**                                              **NO. 25-180-RLB**

**ZODIAK TRANSPORTATION LOGISTICS**                     **CONSENT**
**& SOLUTIONS, LLC, ET AL.**

### ORDER

Before the Court is Optimum Dealership Group, LLC's Motion to Compel Additional Production, Adequate Discovery Responses, and Privilege Log ("Motion to Compel"). (R. Doc. 60). The motion is opposed. (R. Doc. 63).

Also before the Court is Plaintiffs' Motion to Compel with Request for Incidental Relief and Extend Discovery Deadlines ("Motion to Compel"). (R. Doc. 61). The motion is opposed. (R. Docs. 62, 64). Plaintiffs filed a Reply Memorandum. (R. Doc. 67).

Also before the Court is Plaintiffs' Motion for Relief under Fed. R. Civ. P. Rule 56(d) ("Rule 56(d) Motion"). (R. Doc. 70). The motion is opposed. (R. Docs. 72, 73).

### I.    Background

On or about January 27, 2025, Steve Miller and Lisa Miller (collectively, "Plaintiffs") initiated this action by filing a Petition in State Court, naming Zodiak Transportation Logistics & Solutions, LLC ("Zodiak") and Optimum Dealership Group, LLC d/b/a Optimum RV ("Optimum" or "Optimum Dealership Group") as defendants in a nuisance action involving the placement of approximately 80 vacant recreation vehicles (RVs) on a lot adjacent to Plaintiffs' property. (R. Doc. 1-2).

The defendants removed the action, asserting this Court can properly exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1). Both Optimum and Zodiak filed motions to dismiss. (R. Docs. 24, 25).

In support of its motion to dismiss, Optimum argued, in part, that the Court could not exercise general or specific personal jurisdiction over it because: Optimum did not own any of the RVs at issue; Optimum did not contract with Zodiak with respect to the relocation of the RVs; and Optimum did not otherwise direct Zodiak to park the RVs in Louisiana. In support of its position, Optimum submitted three declarations: the Declaration of Travis Wengler, Wholesale Manager of Optimum (R. Doc. 35-2, "Wengler Declaration"); the Declaration of Chris Trapeni, who works "with and for a number of entities that refer to themselves as 'Optimum' or 'Optimum RV'" (R. Doc. 25-3, "Trapeni Declaration"); and the Declaration of Dan Plautz, Chief Financial Officer and Director of Operations at Zodiak (R. Doc. 25-4, "Plautz Declaration"). Optimum subsequently withdrew its reliance on Paragraphs 6 and 7 of the Wengler Declaration and Paragraphs 6, 7, and 10 of the Trapeni Declaration, representing that it could no longer in good faith state that "it did not own at least some of the RVs" despite its previous representations to the contrary. (R. Doc. 39).

The Court denied the foregoing motions to dismiss without prejudice to refile to the extent Plaintiffs did not address the pleading deficiencies in an amended pleading. (R. Docs. 44, 45). Plaintiffs then filed a Second Supplemental, Amending, and Restated Complaint ("Second Amended Complaint"). (R. Doc. 46). Defendants did not file renewed Rule 12(b) motions to dismiss.

A.     **The Factual Allegations**

In the Second Amended Complaint, Plaintiffs allege that they began a short-term rental business at their property, resulting in an average of $3,000.00/month income. (Sec. Am. Compl. ¶ 3). Their property is adjacent to property owned by Rodney Willis Only, LLC. (Sec. Am. Compl. ¶ 2).

Plaintiffs allege that on February 28, 2024, Zodiak, at the "direction of and with full authority delegated to it by defendant Optimum," began transporting and depositing the RVs – which were "infested with rats, vermin of various kinds, fleas, and roaches" and caused ruts on Plaintiffs' property during transport – onto a lot adjacent to Plaintiffs' property in Plaquemine, Louisiana. (Sec. Am. Compl. ¶ 4). Optimum "gave defendant Zodiak the authority to determine where the subject RV's were stored and kept" but Optimum "was ultimately in control of where and how the RV's [were] placed by defendant Zodiak." (Sec. Am. Compl. ¶ 4a). At some point, "defendant Zodiak entered into an oral lease agreement with Rodney Willis Only, LLC permitting the subject RV's to be stored and kept on the property owned by Rodney Willis Only, LLC" for two weeks, possibly a little longer," in exchange for $6,000. (Sec. Am. Compl. ¶ 4c).

A hot shot driver employed by Zodiak informed Mrs. Miller that the RVs are owned by Optimum, resulting in various communications between Mrs. Miller and Chris Trapeni, the alleged Chief Operating Officer (COO) for Optimum, regarding the storage of, and damage caused by, the RVs. (Sec. Am. Compl.¶¶ 5a-d). At no point did Mr. Trapeni represent that the RVs were not the property of Optimum. (*See* Sec. Am. Compl. ¶¶ 5a-d).

Plaintiffs allege that the RVs created an "attractive nuisance" because they attracted individuals inquiring whether the RVs were for sale and potential thieves who "looted and vandalized" the RVs. (Sec. Am. Compl. ¶¶ 5d, 6). Despite Plaintiffs' conversations with

3

representatives of Optimum and Zodiak regarding the RVs, they remained in place until April 19, 2024, and further damage was caused to Plaintiffs' property at the time of their removal. (Sec. Am. Compl. ¶¶ 6a, 7). Plaintiffs also allege that "Zodiak repeatedly trespassed on [their] properties, including leaving feces, urine, trash, ruts, and debris" on the property. (Sec. Am. Compl. ¶ 9).

Plaintiffs seek recovery for nuisance pursuant to Louisiana Civil Code articles 667, 668, and 669; damage caused by ruin, vice, or defect in things pursuant to Louisiana Civil Code article 2317.1; and trespass pursuant to Louisiana Civil Code article 2315. (Sec. Am. Compl. ¶ 9). Plaintiffs allege that "the infestation of vermin from defendants' vehicles and subject RVs, hazardous conditions, ruin, vice, and defect in the RVs and as they were in deplorable condition, including being infested with fleas and vermin, and nuisance activities have rendered their short-term rental property uninhabitable and it is therefore no longer producing any rent or income and is now vacant." (Sec. Am. Compl. ¶ 10). Among other things, Plaintiffs seek recovery for physical injuries, trespass, loss of use of their property, permanent impairment of use of their property, pollution of their property, diminution in value of their property, severe emotional distress and mental anguish, past and future lost wages and earnings, and past and future enjoyment and peaceable possession of their property. (Sec. Am. Compl. ¶ 11).

In response, Optimum and Zodiak filed Answers. (R. Docs. 56, 57). In pertinent part, Optimum's Third Affirmative Defense states that it "did not cause any of Plaintiffs' damages"; its Fourth Affirmative Defense states that it "did not direct, control, or authorize the actions of Zodiak"; and its Fifth Affirmative Defense provides that it is "not in contractual privity with defendant Zodiak and Zodiak is not otherwise an agent, employee, or independent contractor" of Optimum. (R. Doc. 56 at 4).

4

### B.     The Discovery Disputes

The instant Motions to Compel were filed on December 15, 2025, the deadline to complete all discovery. (R. Docs. 60, 61).

In support of its Motion to Compel, Optimum seeks supplemental responses to Interrogatories and Requests for Production served on September 16, 2025. (R. Doc. 60-2). First, Optimum seeks supplemental production of documents in response to Request for Production Nos. 27, 32, and 38, including the production of documents in native format with metadata as requested. (R. Doc. 60-1 at 4-5). Second, Optimum seeks supplemental production of documents in response to Request for Production Nos. 4 and 13, including a finding that Plaintiffs' communications between themselves are not subject to the spousal privilege and the production of a privilege log with respect to any withheld documents on the basis of spousal privilege. (R. Doc. 60-1 at 5-6, 9). Third, Optimum seeks supplemental responses to Interrogatory Nos. 4, 12, 13, and 16. (R. Doc. 60-1 at 6-9).

In support of their Motion to Compel, Plaintiffs seek supplemental responses to Interrogatories and Requests for Production served on May 7, 2025. (R. Doc. 61-3). In particular, Plaintiffs seek an order compelling Optimum to supplement its responses to Interrogatory Nos. 1, 2, 3, 5, 6 and Request for Production of Documents Nos. 2-9, and compelling Zodiak to supplement its responses to Interrogatory Nos. 1, 3, and Requests for Production 2-9. Plaintiffs also seeks an order compelling the depositions of the following individuals: Dr. Marni Tovsen (Optimum's Human Resources Director and consultant of U.S. Carriers); Kari "Kat" Rowling (employee of U.S. Carriers); Jamie Mangold (employee of Optimum); and Denver Beck (CEO of Optimum), as well as an extension of the discovery deadline to complete certain depositions. (R. Doc. 61-1 at 15-18). Plaintiffs argue that the foregoing individuals have "relevant knowledge

about the claims and defenses in this case but were not identified in Initial Disclosures," and were only later identified at the Optimum depositions on December 11, 2025. (R. Doc. 61-1 at 6-8).

On January 30, 2026, Zodiak and Optimum filed Motions for Summary Judgment. (R. Docs. 68, 69).[1] In pertinent part, Optimum asserts that the claims against it should be dismissed because Plaintiffs cannot demonstrate that Optimum had control over Zodiak's transportation of the RVs, Optimum did not direct the transportation of the RVs, and Optimum did not derive any property rights from Rodney Willis or Rodney Willis Only, LLC. (R. Docs. 69-2 at 6-7, 9). Optimum asserts that it lacked the necessary garde over the RVs in light of its contract with U.S. Carriers, which it now contends facilitated the transportation of the RVs. (R. Doc. 69-2 at 7-8). Both Optimum and Zodiak also seek summary judgment on the basis that Plaintiffs lack evidence that the alleged vermin, rats, and fleas came from the RVs. (R. Doc. 69-2 at 8, 11-13; R. Doc. 68-2 at 12-13).

In response, Plaintiffs filed their Motion for Rule 56(d) Relief, through which Plaintiffs seek the opportunity to conduct additional discovery to establish disputed issues of material fact. (R. Doc 70). The discovery sought is largely identical to the discovery sought in Plaintiffs' Motion to Compel:

> (1) obtaining supplementation of the emails regarding who typed Mr. Trapeni's Declaration and cellphone records demonstrating communications with Dr. Tovsen regarding his Declaration; email from Dr. Tovsen and/or others to Mr. Trapeni regarding his Declaration; records of payment for the subject RV's and inventory of the subject RV's; records of where the RVs went to after being on the Millers' property and property adjacent to the Millers' property and Records of the condition of the RVs when they arrived at Optimum and what repairs were done to them (Mr. Trapeni referenced that as "detailed check in process/records"); contract, if any, between Optimum and U.S. Carriers regarding the subject RV's; intakes/complaints to Optimum; W-2 or identifying documents of Mr. Wengler's employer; records for the purchase of the subject RV's, inspector's notes,

---

[1] Plaintiffs did not move for summary judgment.

inventory list, and "copy and paste" list; and cellphone records between Mr. Wengler and Mr. Rowling, and cellphone records between Mr. Wengler and Mr. Buscemi; and "investigation" documents by Dr. Tovsen and her "team"; (2) deposing Dr. Tovsen, personally, Ms. Rowling, Mr. Mangold, and Mr. Beck; and (3) allowing plaintiffs to conduct any additional and/or related discovery necessary based on the testimony of these witnesses.

(R. Doc. 70 at 3-4). In the alternative, Plaintiffs seek the opportunity to supplement their prospective opposition to the Motions for Summary Judgment "with additional evidence and facts" obtained to the extent the Court grants their Motion to Compel. (R. Doc. 70 at 4). Plaintiffs submit declarations in support of the opportunity to conduct additional discovery. (*See* R. Docs. 70-3, 70-4).

In light of the foregoing motions, the Court stayed Plaintiffs' deadline to respond to the Defendants' Motions for Summary Judgment. (R. Doc. 71).

## II.     Law and Analysis

### A.      Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii)

the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

If a party fails to provide initial disclosures or fully respond to discovery requests, the party seeking discovery may move to compel disclosures and responses and appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Rule 16(b)(4) of the Federal Rules of Civil Procedure allows for the modification of a scheduling order deadline upon a showing of good cause and with the judge's consent. The Fifth Circuit has explained that a party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Marathon Fin. Ins. Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). In determining whether the movant has established "good cause" for an extension of deadlines, the Court considers four factors: (1) the party's explanation for the requested extension; (2) the importance of the requested extension; (3) the potential prejudice in granting the extension; and (4) the availability of a continuance to

cure such prejudice. *See Leza v. City of Laredo*, 496 Fed. App'x 375, 377 (5th Cir. 2012) (citing *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

Under Rule 56(d), if the non-moving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d). Rule 56(d) provides a tool to keep open the doors of discovery in order to adequately oppose a summary judgment motion. *Six Flags Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009). A party seeking additional discovery pursuant to Rule 56(d) must show: (1) how that discovery will create a genuine issue of material fact; and (2) that the movant exercised due diligence in discovery. *Id.*; *Culwell v. City of Fort Worth*, 468 F.3d 868, 871-73 (5th Cir. 2006); *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005).

District courts have discretion to grant or deny a Rule 56(d) motion. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citing *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). "Rule 56(d) motions for additional discovery 'are broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561). "Nevertheless, nonmoving parties requesting Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561). "Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the

emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561).

Where a party seeks an extension of the discovery deadline while a summary judgment motion is pending, district courts will consider the standards imposed by both Rule 16(b)(4) and Rule 56(d). *Warner v. Lear Corp.*, No. 15-1878, 2017 WL 930829, at *2 (N.D. Tex. Mar. 9, 2017) ("Because Warner filed his motion while Lear's summary judgment motion was pending, the court will consider Warner's motion both under the Fed. R. Civ. P. 16(b)(4) good cause standard and as a motion for additional discovery under Rule 56(d)."); *Off. Brands, Inc. v. Roc Nation Sports, LLC*, No. 15-2199, 2017 WL 291536, at *6 (N.D. Tex. Jan. 23, 2017) ("Rule 16(b)(4), which provides that a scheduling order "may be modified only for good cause and with the judge'' consent," is tied to Rule 56(d) in this context, so considering Plaintiff's request in light of both is proper.").

### B.    Optimum's Motion to Compel (R. Doc. 60)

#### 1.    The Meet-and-Confer Requirement

A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). With no elaboration, Optimum certifies that its counsel "conferred in good faith with counsel for Plaintiffs in an effort to resolve this Motion without court action" but the "Plaintiffs do not agree to the relief sought in this Motion." (R. Doc. 60-1 at 10).

Despite this certification, Plaintiffs assert that they "provided timely full responses on October 16, 2025, and supplemented their responses on November 6, 2025, November 10, 2025, November 11, 2025, December 5, 2025, December 3, 2025, and December 2025" but "[n]o

10

indication was given by defense counsel that supplementation did not cure any alleged deficiency until the instant Motion was filed and thereafter by email." (R. Doc. 63 at 2) (citing R. Docs. 63-1, 63-2, 63-3, 63-4). Plaintiffs further represent that at no time during the parties' communications did defense counsel "bring up or discuss the alleged deficiencies as it related to plaintiffs' discovery answers." (R. Doc. 63 at 4).

The emails attached to Plaintiffs' opposition show that defense counsel raised the issues addressed in Optimum's motion on October 29, 2025. (R. Doc. 63-1). That said, there is no record that, as required by the Scheduling Order, defense counsel attempted to confer with Plaintiffs' counsel "in person or by telephone for purposes of amicably resolving the issues and stating why they are unable to agree or stating that opposing counsel has refused to do so or confer after reasonable notice." (R. Doc. 33 at 1). The record does not support a finding that any specific conference – whether by telephone or in person – was held or attempted for the purposes of resolving the issues raised in Optimum's motion in good faith without court intervention.

Given the foregoing, Optimum's motion is subject to denial for failure to satisfy Rule 37(a)(1). *See Calhoun v. CarMax Bus. Servs., LLC*, No. 24-660, 2025 WL 3567851, at *2 (M.D. La. Nov. 17, 2025) (single email setting a conference without further efforts to communicate is insufficient to meet the requirements of Rule 37(a)(1)) (citing cases); *McAllister v. McDermott, Inc.*, No.18-361, 2019 WL 6050724, at *2 (M.D. La. Nov. 15, 2019) (single attempt through email to obtain supplemental responses under threat of filing a motion to compel did not satisfy the requirements of Rule 37(a)(1)) (citing cases); *see also Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001) (recognizing Rule 37(a)(1)'s meet-and-confer "prerequisite is not an empty formality"). Given the record, however, the Court will resolve the merits of Optimum's

11

motion and consider the failure to hold a good faith conference for the purpose of determining whether to award any reasonable expenses. *See* Fed. R. Civ. P. 37(a)(5)(i).

### 2.    Electronically Stored Information in Native Format

Optimum raises a global argument that Plaintiffs' first document production, which consists of primarily of a single PDF document, is "woefully deficient and incomplete." (R. Doc. 60-1 at 4). Optimum did not submit a copy of the production for review.

In opposing this relief, Plaintiffs state that they "produced documents, audio recordings, and video recordings in the format that they possess them" and offered Optimum the opportunity to inspect original photographs on November 6 and November 10, 2025, but those offers were ignored. (R. Doc. 63 at 3-4).

The record shows that Optimum stated the following on October 29, 2025 in an email: "The document production primarily consists of illegible, photocopied documents, including photographs and emails. The emails are missing metadata and attachments, and the photographs are completely illegible. Further, the majority of the production consists of a single PDF. Federal law requires documents to be produced in their native format with all metadata intact. Please re-produce the entire production to comply with these requirements." (R. Doc. 63-1 at 1). In response, Plaintiffs' counsel stated on November 6, 2025: "[W]e produced all of the photographs we have and you are welcome to come and examine the originals." (R. Doc. 63-1 at 1).

Optimum's instructions to the Requests for Production specifically provides the following: "All documents shall be produced in their native format, with all metadata intact. The documents shall indicate, by notation or grouping, which request each produced document is responsive to." (R. Doc. 60-2 at 5). Plaintiffs have failed to direct the Court to any objection to this specific instruction.

Rule 34 allows a request for production to "specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). Here, Optimum requested documents to be produced in their native format.[2] In responding to a request for electronically stored information, "[t]he response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form – or if no form was specified in the request—the party must state the form or forms that it intends to use." Fed. R. Civ. P. 34(b)(2)(D). Despite being asked for documents (and, therefore, electronically stored information) to be produced in native format, Plaintiffs produced copies of emails and photographs in a single PDF document.[3] Plaintiffs did not raise an objection to the requested form.

While the foregoing PDF production is Bates numbered, it does not include the requested electronically stored information in native format, with metadata intact, as requested. Accordingly, to the extent Plaintiffs produced (1) emails and (2) digital photographs in PDF form, the Court will require them to supplement the production with electronically stored information in native format, with metadata intact. *See*, *e.g.*, *Express Lien, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.*, No. 13-3323, 2014 WL 12767814, at *3 (E.D. La. Mar. 20, 2014) (requiring production of electronically store information in native format where responding party failed to raise objections). The quantity of emails and photographs produced by Plaintiffs appears to be relatively limited, and Plaintiffs have not demonstrated any burden or prejudice imposed by a production in native format, with metadata intact.

---

[2] "[A] Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information unless discovery in the action has clearly distinguished between electronically stored information and 'documents.'" Fed. R. Civ. P. 34(a), Advisory Committee Notes to 2006 Amendment.

[3] There appears to be no dispute that Plaintiff produced certain hard copy documents, as well as audio recordings and video recordings, in the proper format.

### 3.      Optimum's Requests for Production Nos. 27, 32, 38

Optimum argues that Plaintiffs' "document production" as a whole "is facially

incomplete" because it "is missing documents that are known to exist, including Plaintiffs'

correspondence with current and prospective tenants at their AirBNB, correspondence with

AirBNB itself, correspondence with Orkin, correspondence with Rodney Willis, and

correspondence with the multitude of individuals that Plaintiffs have identified as having direct

knowledge of the alleged legal issues." (R. Doc. 60-1 at 4-5). Optimum asserts that Plaintiffs

submitted "a single PDF screenshot of a message inbox on AirBNB" that "shows snippets of

various communications the Plaintiffs had with prospective and current tenants" but did not

produce the full conversations. (R. Doc. 60-1 at 5).

Optimum argues that this production is deficient without providing, as required by the

Court's local rules, the verbatim language of each request for production and responses or

objections at issue. *See* LR 37 ("Motions addressed to issues concerning discovery propounded

under Fed. R. Civ. P. 33, 34, 36 and 37 must quote verbatim each interrogatory, request for

production, or request for admission to which the motion is addressed, followed immediately by

the verbatim response or objection which provided thereto."). Instead, Optimum states, in

conclusory fashion, that it "requested these documents in Request for Productions Nos. 27, 32,

38, and the Court should require production." (R. Doc. 60-1 at 5).

These document requests collectively seek documents and communications "relating to

any payments made by AirBnB or any customer, renter, or tenant of the 59020 Bellview

Property," "with any employee or representative of Rodney Willis Only, LLC or Rodney Willis,"

and "with any of the following [26] individuals [and Orkin Pest Control] relating to this Lawsuit

14

or any of the allegations of this Lawsuit." (R. Doc. 60-2 at 7-8). In response, Plaintiffs referred Optimum to its document production. (R. Doc. 60-2 at 7-9)

In opposing the motion, Plaintiffs confirm that despite diligent searches, they are not in possession of any "additional correspondence with tenants, AirBnB, Orkin, Willis, or other unidentified individuals regarding this matter other than what has been produced," that all correspondence with prospective tenants was through AirBnB's platform "and is in the possession of AirBnB," and that they are not "in possession of any additional correspondence with Orkin" as supported by the lack of any documents produced by Orkin in response to a subpoena. (R. Doc. 63 at 5).

Rule 34 requires that a responding party produce responsive documents that are within their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Documents are deemed to be within the "possession, custody, or control" of a responding party if that party either has "actual" possession, custody, or control of the documents or if that party "has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action." *Estate of Monroe v. Bottle Rock Power Corp.,* No. 03-2682, 2004 WL 737463, at * 10 (E.D. La. April 2, 2004). "Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty." *Id.* (citing *Commerce and Industry Ins. Co. v. Grinnell Corp.,* Nos. 97–0775, 97–0803, 98–2200, 2001 WL 96337, at *3 (E.D. La. Feb. 1, 2001)). The burden, however, is on the party seeking discovery to make a showing that the other party has control over the documents sought. *Id.* "When determining the sufficiency of control of material for purposes of Rule 34, the nature of the relationship between the party and the non-party is the key." *Id.*; *see MacNair v. Chubb Eur. Grp. SE*, No. 23-761, 2024 WL 663652, at *6 (E.D. La. Feb. 16, 2024) ("In determining the sufficiency of control over material

15

for discovery purposes, the nature of the relationship between the party and the non-party is key.").

Here, Optimum has not met its burden of demonstrating that Plaintiffs have "custody" or "control" over documents that it has represented are not in its actual possession. Optimum has also not identified any specific attempts to identify outstanding communications at Plaintiffs' depositions or through good faith conferences with Plaintiffs' counsel. Accordingly, the Court will not require Plaintiffs to respond further to these document requests.

### 4.    Optimum's Request for Production No. 4

Request for Production No. 4 seeks the production of "[a]ll documents and communications produced or received in discovery in any lawsuit between the Millers and Rodney Willis Only, LLC or Rodney Willis." (R. Doc. 60-2 at 5). Plaintiffs responded that "[n]o discovery was propounded by said defendants." (R. Doc. 60-3 at 8).

Optimum argues that the response is insufficient because it does not state whether any documents and communications were produced or received in the litigation.

Plaintiffs acknowledge that they are parties in the following lawsuit: *Millers v. Rodney Willis Only, LLC and Rodney Willis*, Docket No. 83509, 18th Judicial District Court, Parish of Iberville, State of Louisiana ("the *Willis* lawsuit"). Plaintiffs represent that at the time the request for production was received, neither party in the lawsuit had served or produced any discovery. While Plaintiffs now contend that the request seeks irrelevant information, they have since produced copies of discovery responses provided by Rodney Willis Only, LLC and Rodney Willis in the *Willis* lawsuit, further representing that there "are no additional responsive documents to provide." (R. Doc. 63 at 6-7; *see* R. Doc. 63-9).

Plaintiffs did not raise a timely objection to the relevancy of the information sought by this discovery request. *See* Fed. R. Civ. P. 34(b)(2). That said, given the foregoing representation that there are no additional responsive documents to provide, the Court will not order any further production at this time. Plaintiffs are reminded that they have a duty to supplement their discovery responses to the extent responsive documents become available. *See* Fed. R. Civ. P. 26(e). Accordingly, Plaintiffs must supplement their production to Optimum with any documents and communications that they ultimately produce in the *Willis* lawsuit, unless such productions are made pursuant to a protective order governing the exchange of confidential information in the *Willis* lawsuit.

### 5.    Optimum's Request for Production No. 13 and Privilege Log

Request for Production No. 13 seeks the production of "[a]ll documents and communications between Steve Miller and Lisa Miller relating to any of the allegations of this Lawsuit." (R. Doc. 60-2 at 5). Plaintiffs objected to the request "on the basis of spousal privilege." (R. Doc. 60-3 at 8).

Optimum argues that the objection must be overruled because "spousal privilege cannot be used as a both a sword and a shield" where the spouses are co-plaintiffs, and that Plaintiffs must otherwise be compelled to produce a privilege log with respect to documents withheld on the basis of spousal privilege. (R. Doc. 60-1 at 6, 9-10).

While maintaining their assertion that the spousal privilege applies to their communications, Plaintiffs assert that they informed Optimum on November 6, 2025 that they had "performed a diligent search and are not in possession of any responsive documents which they contend are protected by spousal privilege." (R. Doc. 63 at 7). It remains unclear whether Plaintiffs have produced all responsive documents that they do not contend are protected by

spousal privilege. Accordingly, Plaintiffs shall clarify this response by either (1) producing any responsive documents in their possession, custody, or control responsive to Request for Production No. 13, or (2) informing Optimum that they have no responsive documents to produce. Given the foregoing representations, the Court will not require Plaintiffs to produce a privilege log.

### 6.    Plaintiffs' Verification of Answers to Interrogatories

Optimum seeks the verification to all answers to interrogatories as required by Rule 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath"). (R. Doc. 60-1 at 6).

In response, Plaintiffs explain that they executed a Verification for their discovery responses on November 6, 2025, which was notarized that same day, but was inadvertently not sent with the discovery responses. (R. Doc. 63 at 7). This Verification has since been provided to Optimum. (R. Doc. 63-9 at 1; *see* R. Doc. 63-9 at 19).

Given the foregoing, the relief sought with respect to the Rule 33(b)(3) verification is moot.

### 7.    Optimum's Interrogatory No. 4

Interrogatory No. 4 seeks the identification of Plaintiffs' "employer(s), job title, and salary, for the prior 5 years." (R. Doc. 60-2 at 14). Plaintiffs provided the following response:

> Plaintiffs were self-employed with the AirBNB property which provided income. Mr. Miller was also employed by Westlake Chemical. Plaintiffs attach to these responses the rental history for the property. However, as to Mr. Miller's income information from Westlake, plaintiffs object on the basis the request is overly broad, unduly burdensome, not calculated or likely to lead to the discovery of either relevant or admissible evidence, and on the basis of privacy and confidentiality, specifically as the information is contained in their tax returns. Subject to objection and without waiver of same, plaintiffs will produce their tax returns for the past three (3) years subject to a mutually agreeable protective order and with redaction of their Social Security numbers.

(R. Doc. 60-3 at 23). Optimum seeks supplementation with the identification of Mr.

Miller's job title and salary. (R. Doc. 60-1 at 7).

Plaintiffs represent that on November 6, 2025, they informed Optimum through email

"that Mr. Miller was employed at Westlake Chemical as a shift supervisor for the past 5 years,"

they provided information related to his salary within his tax returns provided on December 2,

2025, and Optimum did not ask any questions regarding Mr. Miller's salary at his deposition. (R.

Doc. 63 at 8).

Given the foregoing, the Court will not order any further supplementation in response to

this interrogatory.

### 8.    Optimum's Interrogatory No. 12

Interrogatory No. 12 seeks information with respect to the same individuals and entities

identified in Request for Production No. 38. The interrogatory, and Plaintiffs' answer, are as

follows:

**<u>Optimum's Interrogatory No. 12:</u>**

For each of the following individuals, provide their contact information and
identify in detail the specific facts you believe each of these individuals have of
the allegations of this Lawsuit:

a. Debbie Bissett
b. Marissa Jimenez
c. Aprila Wallace
d. Rachel Conners
e. Tammy Jo Street
f. Kimberly Corts
g. Jenifer Kidd
h. Brodie Meche
i. Nathan Prince
j. Mitchel Ourso
k. Nedi Morgan
l. "Reed c/o LDEQ"
m. Brian Romero

      n. Tonly Clayton
      o. Billy Nungesser
      p. Caleb Klienpeter
      q. Faith R. Willis
      r. Bliss M. Higgins
      s. Catherine Lucile Breaux Miller
      t. Steve Gullotto
      u. Chris Daigle
      v. Cindy Lafosse
      w. Colton West
      x. Steve Smith
      y. Lewis Burner
      z. Brett Stassi
      aa. Orkin Pest Control

(R. Doc. 60-2 at 16-17).

**Plaintiffs' Answer:**

a-i: DEQ/LDEQ Employees, c/o DEQ/LDEQ relating to concrete washout claims involving Willis and Willis Only (unrelated to this lawsuit).

j: Mitchel Ourso, former Parish President, phone number (225) 776-6660, facts and damages

k-s: None

t: Steve Gullotta, phone number (225) 776-1627, facts and damages re: parish meeting on changing parish rules of trespassing and nuisance neighbors

u: Chris Daigle, current Parish President, facts and damages re: parish meeting on changing parish rules of trespassing and nuisance neighbors

v-w: DEQ/LDEQ Employees, c/o DEQ/LDEQ relating to concrete washout claims involving Willis and Willis Only (unrelated to this lawsuit).

x: Steve Smith, Parish Councilman of Mrs. Miller's district, phone number (225) 776-1519, facts and damages re: the situation the plaintiffs have been facing.

y-z: DEQ/LDEQ Employees, c/o DEQ/LDEQ relating to concrete washout claims involving Willis and Willis Only (unrelated to this lawsuit).

aa. Orkin Pest Control, employee Gregg Barber administered pest control services to the Property.

(R. Doc. 60-3 at 36-37).

There is no dispute that Plaintiff identified the foregoing individuals and entities in their Rule 26(a)(1) Initial Disclosures, which do not appear to be part of the record. Optimum does not otherwise identify the relevance of the individuals and entities identified in the interrogatory.

In response, Plaintiffs state that they "cannot speculate as to the precise details each witness may know until that person testifies," they "provided what they believe each witness knows about the allegations in this litigation to the best of their knowledge," and they only listed the individuals identified in K-S "out of an abundance of caution to ensure compliance with" Rule 26(a)(1). (R. Doc. 63 at 8-9).

Optimum has made no specific effort to demonstrate that the supplemental information sought regarding the foregoing individuals and entities falls within the scope of discovery. While Plaintiffs could have provided more detailed responses, Optimum had the opportunity to question Plaintiffs with respect to the individuals and entities listed in the interrogatory. Optimum has not identified any specific effort to obtain this information at the depositions of the Plaintiffs or in their correspondence with Plaintiffs' counsel. Given the record, the Court finds the foregoing responses to be sufficient.

### 9.    Optimum's Interrogatory No. 13

Interrogatory No. 13 asks for the identity and description of the damages Plaintiffs "are seeking from Rodney Willis and Rodney Willis Only, LLC including the type of damage, the amount of damages, and any documentation [Plaintiffs] have to support your entitlement to said damages." (R. Doc. 60-2 at 17). In response, Plaintiffs directed Optimum to the *Willis* lawsuit "as the best evidence of its contents," further noting that the case remained in "the discovery phase." (R. Doc. 60-3 at 60).

Optimum argues that Plaintiffs' answer "is completely nonresponsive." (R. Doc. 60-1 at 9). In opposition, Plaintiffs assert that the pleadings and supporting affidavits in the *Willis* lawsuit sets forth the damages sought, noting that Optimum did not question Plaintiffs about this issue at their depositions and that Plaintiffs are precluded by Louisiana Code of Civil Procedure Article 893 from seeking a specific amount of damages in the *Willis* lawsuit. (R. Doc. 63 at 9).

Again, Optimum has made no effort to demonstrate that the information sought – damages requested in a separate State court lawsuit – falls within the scope of discovery in this action. At any rate, the Court finds Plaintiffs' response and production of the actual pleadings in the *Willis* lawsuit to be a sufficient response.

### 10.    Optimum's Interrogatory No. 16

Interrogatory No. 16 seeks a description in detail of the basis for the denial of any request for admission. (R. Doc. 60-2 at 26). In response, Plaintiffs stated that "[t]he basis for any objection is described in the Answer to the Interrogatory of the same." (R. Doc. 60-3 at 64).

Optimum argues that Plaintiffs' answer "is nonresponsive" given that it refers to answers to interrogatories, not requests for admission. Optimum seeks an order compelling Plaintiffs "to respond to the question actually asked in this interrogatory." (R. Doc. 60-1 at 9). Optimum does not identify or address any of Plaintiffs' underlying denials of the requests for admission.

Optimum served 22 Requests for Admission. Plaintiffs assert that they admitted (2) two requests for admission (Request for Admission Nos. 16 and 18); denied in part (5) five requests for admission with partial admissions (Request for Admission Nos. 4, 5, 6, 7, and 21); denied (9) nine requests for admission and provided explanations (Request for Admission Nos. 1, 2, 3, 8, 9, 13, 14, 15, and 22); and denied (6) six requests for admission with no explanation (Request for

Admission Nos. 10, 11, 12, 17, 19, and 20). (R. Doc. 63 at 9-11). Plaintiffs suggest that the reasons for the denials are "subsumed in plaintiffs' responses to the Interrogatories and Requests for Production of Documents." (R. Doc. 63 at 10). Plaintiffs provide certain examples of where Optimum can locate their further responses to the denied requests for admission in their responses to interrogatories and requests for production. (R. Doc. 63 at 10-11). Finally, Plaintiffs argue that Interrogatory No. 16 effectively consists of multiple subparts that exceed the 25 interrogatory limit of Rule 33. (R. Doc. 63 at 11).

Where an interrogatory makes a general request for the description of the reasons for denying responses to individual requests for admission that involve different subject areas, such an interrogatory may be viewed as multiple interrogatories for the purposes of the 25 interrogatory limit. *See Est. of Manship v. United States*, 232 F.R.D. 552, 557 (M.D. La. 2005). Here, Plaintiffs did not raise any objection to the interrogatory on the basis that it exceeded the 25 interrogatory limit and provided a vague and arguably evasive answer. Accordingly, Plaintiffs waived any argument that Optimum's Interrogatory No. 16 effectively exceeds the 25 interrogatory limit.

Plaintiffs must provide a supplemental response to Interrogatory No. 13 that answers the actual interrogatory.  To the extent Plaintiffs rely on other written discovery responses, they must identify those specific responses and how they relate to a specific denial of a request for admission. Plaintiffs may, to the extent applicable, incorporate the supplemental responses provided in their opposition memorandum.

C.      **Plaintiffs' Motion to Compel and Extend Deadlines (R. Doc. 61) and Rule 56(d) Motion (R. Doc. 70)**

1.      **Potential Trial Witnesses and Documents**

Plaintiffs seek an order compelling both Optimum and Zodiak to provide supplemental responses to Interrogatory Nos. 1 and 3, and Request for Production No. 4. Through these written discovery requests, Plaintiffs collectively seek the identification of "may call" witnesses and prospective testimony, as well as the identification and production of documents that may be used at trial. (R. Doc. 61-3 at 3-5). Defendants responded that these written discovery requests were premature given early stage of the proceeding. (R. Doc. 61-5 at 1-2, 8; R. Doc. 61-6 at 1-2, 7).

The Court's Scheduling Order prescribes a deadline to submit a proposed pre-trial order, which is the proper deadline for the identification of potential trial witnesses and exhibits. (*See* R. Docs. 33, 34). The Court will not compel the identification or production of trial witnesses and exhibits prior to that deadline at the discovery phase. *Casanola v. Delta Mach. & Ironworks, LLC*, No. 19-300, 2021 WL 41078, at *6 (M.D. La. Jan. 5, 2021) (citing *Nguyen v. Louisiana State Board of Cosmetology*, No. 14-80, 2016 WL 3646854, at *1 (M.D. La. April 13, 2016) ("[T]he Court will not issue an order compelling the identification of may-call witnesses at a time that conflicts with its own Scheduling Order.").

Accordingly, the Court will sustain Defendants' objections with respect to these discovery requests.

That said, Zodiak supplemented its responses to these interrogatories with applicable lists and documents that may be used at trial, noting that it has "previous produced or used in depositions all known documents that Zodiak might conceivably use at trial." (R. Doc. 62; *see* R. Doc. 67-5). Optimum, on the other hand, states that it offered to revise its interrogatory

responses to identify "all witnesses with knowledge and all documents relevant to certain allegations," but Plaintiffs' counsel declined that offer. (R. Doc. 64 at 5).

In their April 30, 2025 initial disclosures, Defendants identified Plaintiffs, Rodney Willis, Al Buscemi, Dan Plautz, Chris Trapeni, and Travis Wengler as individuals who may have discoverable information in this action. (R. Doc. 61-2). While the Court will not require Defendants to provide any further responses to Interrogatory Nos. 1 and 3, and Request for Production No. 4, the Court recognizes that Optimum did not disclose all individuals and documents as required by Rule 26(a)(1).[4]

A party may move to compel an initial disclosure required by Rule 26(a). *See* R. Doc. 37(a)(3)(A). As discussed further below, the Court will provide Plaintiff the opportunity to depose certain witnesses and obtain documents that should have been disclosed in initial disclosures or supplemental initial disclosures.

### 2. Documents Identified at the Optimum Depositions

Plaintiffs seek an order requiring Optimum to provide supplemental responses to Interrogatory Nos. 2, 5, and 6 and Requests for Production Nos. 2, 3, 5, 6, 7, 8, and 9.[5] As required by Local Rule 37, Plaintiffs state verbatim the language of these written discovery requests and Optimum's responses. (*See* R. Doc. 61-1 at 2-5).

---

[4] In relevant part, a party must provide the following in its initial disclosure without awaiting a discovery request: (i) "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment" and (ii) "a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). The parties have continuing obligation to supplement their initial disclosures (and written discovery responses) in accordance with Rule 26(e)(1).

[5] Plaintiffs also seek an order requiring Zodiak to provide supplemental responses to Requests for Production Nos. 2, 3, 5, 6, 7, 8, and 9. Given that the focus of Plaintiffs' arguments is solely on documents purportedly revealed in deposition testimony by Optimum deponents, the Court will only address Plaintiffs' motion with respect to Optimum. Any relief sought with respect to Zodiak pertaining to Requests for Production Nos. 2, 3, 5, 6, 7, 8, and 9 is denied unless otherwise stated below.

Plaintiffs do not, however, argue that Optimum's original responses to Interrogatory Nos. 2, 5, and 6 and Requests for Production Nos. 2, 3, 5, 6, 7, 8, and 9 are, in and of themselves, deficient. Instead, Plaintiffs argue that the Rule 30(b)(6) deposition of Optimum and the individual depositions of Chris Trapeni and Travis Wengler resulted in the discovery of additional documents and information that should have been disclosed in response to these written discovery requests.[6]

Plaintiffs state that they conferred with defense counsel on June 17 and June 20, 2025, resulting in the supplementation of certain responses. (R. Doc. 61 at 6; *see* R. Doc. 61-7). Plaintiffs further state that these conferences "did not cure the deficiencies related to Interrogatory Numbers 1 and 3, and Requests for Production of Documents Number 3."  (R. Doc. 61 at 6). Plaintiffs sought further supplementation on August 6 and September 17, 2025, but did not receive any further supplementation. (R. Doc. 61-9).

On December 11, 2025, Plaintiffs deposed Mr. Trapeni, Mr. Wengler, and Optimum. (R. Doc. 67-1, "Trapeni Depo. Tr."; R. Doc. 67-2, "Wengler Depo. Tr."; R. Doc. 67-3, "Optimum Depo Tr."). Plaintiffs argue that at these depositions they first became aware of "at least nineteen (19) additional documents" identified at the depositions. (R. Doc. 61-1 at 13-14).[7] These documents can be categorized in the following five groups:

(a) Documents pertaining to the Trapeni and Wengler Declarations;
(b) Wengler Communications;
(c) Purchase and Inventory Records;
(d) U.S. Carriers Contract; and
(e) Documents pertaining to Dr. Tovsen's investigation of Plaintiffs' claims.

---

[6] Plaintiffs also argue that the deposition testimony resulted in the identification of four additional individual witnesses who should have been disclosed pursuant to Rule 26(a)(1), namely Dr. Marni Tovsen, Kari "Kat" Rowling, Jamie Mangold, and Denver Beck. (R. Doc. 61-1 at 11). The Court addresses that issue below.

[7] Plaintiffs list various overlapping categories of documents "identified" at the depositions. Plaintiffs describe these documents (and the testimony in which they were purportedly first identified) in their Reply Memorandum. (*See* R. Doc. 67).

Plaintiffs argue that these documents must be produced because they should have been identified or produced in response to Interrogatory Nos. 2, 5, and 6, and/or Requests for Production Nos. 2, 3, 5, 6, 7, 8, and 9. (R. Doc. 61 at 8-11).

In support of their Rule 56(d) motion, "Plaintiffs contend the documents they seek to be supplemented will show disputed issues of fact that Optimum did have control over the transportation and storage of the RV's, both Optimum and Zodiak knew of the RV's condition with vermin, rats, and fleas, and defendant Optimum derived its rights from Willis/Willis Only, through Zodiak." (R. Doc. 70-2 at 2).

### a.    Documents pertaining to the Trapeni and Wengler Declarations

Plaintiffs seek the production of "[e]mails regarding who typed Trapeni's Declaration and cellphone records demonstrating communications with Dr. Toven regarding his Declaration" and an "[e]mail from Dr. Tovsen and/or others to Trapeni regarding Declaration." (R. Docs. 67 at 1-2). Plaintiffs also seek the production of a "W-2 or identifying documents of Mr. Wengler's employer" given his contradictory answer at his deposition that he was employed by "Optimum RV" and did not know anything about "Optimum Dealership Group, LLC" of whether he was employed by that entity. (R. Doc. 67 at 5-6) (citing Wengler Depo Tr., 5:9-8:11, 8:16-18, 9:20-23).

Plaintiffs have had the opportunity to depose Mr. Trapeni and Mr. Wengler with respect to the veracity of their statements in their submitted declarations, which they signed under penalty of perjury. Plaintiffs have not established the relevance of the individual(s) who typed or prepared these declarations. The Court also finds Plaintiffs' reliance on Request for Production No. 3 to be misplaced. This request seeks communications between Optimum, Plaintiffs, and/or Rodney Willis and/or Rodney Willis Only LLC:

**Plaintiffs' Request for Production No. 3:**

Copies of any and all communications, including writings, emails, letters, text messages, posts, affidavits, and statements, of any kind, regarding in any way, Optimum Dealership Group, LLC. and with, and, or about the Plaintiffs, and/or Rodney Willis and/or Rodney Willis Only LLC.

**Optimum's Response:**

Objection. This request is overbroad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. As drafted, this request seeks all conversations between Zodiak, Optimum, and/or Rodney Willis and/or Rodney Willis Only LLC, regardless of their subject matter or relation to the allegations of this lawsuit. Further, this request is not limited to any specific temporal period, and could potentially encompass voluminous amounts of irrelevant documents spanning multiple years. Optimum will not produce documents in response to this request until the request is limited in scope to a relevant, non-burdensome subject matter, and an appropriate temporal period.

While the request arguably seeks production of the declarations as "statements," it cannot be read to include the underlying drafting of the declarations. To the extent necessary, the Court sustains Optimum's objections based on overbreadth. Email communications regarding the preparation of the declarations, as well as the identity of the individual or individuals who drafted the declarations, are not sought by this request for production and Plaintiffs have not demonstrated that such information falls within the scope of discovery.

That said, and as discussed below, the Court will provide Plaintiffs with the opportunity to depose Dr. Tovsen in her individual capacity. Plaintiffs will therefore have the opportunity to obtain further testimony regarding the drafting of the Trapeni Declaration, including Dr. Tovsen's involvement, if any. Furthermore, Dr. Tovsen, who is Optimum's Human Resources Director, can clarify for the record whether Mr. Trapeni and Mr. Wengler are employed by Optimum. The Court finds no basis for ordering Mr. Trapeni and Mr. Wengler, who are non-party individuals, to produce their W-2s in this litigation.

In sum, Plaintiffs have not directed the Court to any specific document requests or subpoenas seeking the foregoing information, and have not otherwise demonstrated that the sought production is required to establish disputed issues of material fact.

### b.    Wengler Communications

Plaintiffs seek the production of cellphone records of calls (1) between Mr. Wengler and Ms. Rowling (of U.S. Carriers) and (2) between Mr. Wengler and Mr. Buscemi (of Zodiak). (R. Doc. 67 at 7-8). Plaintiffs seek these records, if they occurred at all, to establish the timing of Mr. Wengler's communications with Ms. Rowling and Mr. Buscemi regarding the transfer of the RVs at issue.

Plaintiffs have not directed the Court to any specific request for Mr. Wengler's cellphone records, whether through a request for production directed at Optimum or subpoena directed at Mr. Wengler or the applicable mobile service carrier. Plaintiffs have had an opportunity to depose Mr. Wengler about the substance and timing of any such communications.[8] As discussed below, Plaintiffs have (or will have) the opportunity to depose Mr. Buscemi regarding the nature and timing of any communication between him and Mr. Wengler. The Court will also provide Plaintiffs with the opportunity to depose Ms. Rowling, and, therefore, will have the opportunity to seek testimony regarding the nature and timing of any communication between her and Mr. Wengler.

In sum, Plaintiffs have not directed the Court to any specific document requests or subpoenas seeking the foregoing information, and have not otherwise demonstrated that the sought production is required to establish disputed issues of material fact.

---

[8] Optimum cites Mr. Wengler's deposition testimony in support of the assertion that he "testified that he did not have conversations with Mr. Buscemi about the Plaintiffs" and "that he does not know if his cell phone record would reflect telephone calls he had with Mr. Buscemi." (R. Doc. 64 at 6 n.2).

### c.     Purchase and Inventory Records

Plaintiffs seek production of purchase records and inventory records, including inventory notes and lists identified at the December 11, 2025 depositions. (R. Doc. 67 at 3-4, 6-7).

Mr. Trapeni testified that Optimum purchased 700 RVs from the Federal Emergency Management Agency ("FEMA") at auction, and those RVs were sent to various Optimum dealerships through U.S. Carriers. (Trapeni Depo Tr., 48:8-51:24, 60:7-24, 127:24-128:4). Plaintiffs argue that purchase and inventory records regarding the RVs are responsive to Request for Production Nos. 3 and 8, and are "relevant to establish the condition of the RV's at the time they were purchased and what was known by the defendant about their condition. . . ." (R. Doc. 67 at 3).

The Court disagrees that these documents are responsive to Request for Production No. 3 (which seeks communications), or Request for Production No. 8 (or No. 9), which seek documents relating to the "positioning" of the RVs, respectively, on the property of Rodney Willis and/or Rodney Willis Only, LLC and the property of another entity, Crown Storage. Plaintiffs could have sought and obtained these documents through a specifically worded request for production. Plaintiffs also do not direct the Court to any conference in which they specifically sought these documents. Finally, Plaintiffs did not have to wait until the December 11 depositions to be alerted of the possible existence of purchase and inventory documents regarding the RVs at issue.

Nevertheless, the Court will require Optimum to produce purchase and inventory documents, which are relevant to Optimum's ownership and control over the RVs, as well as its knowledge of the condition of the RVs at the time of purchase and delivery. This production must include the following:

- Purchase records pertaining to the RVs at issue, including any bills of sale, purchase agreements, or records from the FEMA auction; and

- Inventory records pertaining to the RVs at issue, including records pertaining to the condition of the RVs and any maintenance, repair, or inspection records.

These documents shall include any records of the locations (*i.e.*, Optimum RV dealerships or otherwise) where the RVs were transferred after being temporarily stored on or adjacent to the Plaintiffs' property at the times at issue in this litigation. The production shall also include any communications or complaints from customers regarding the condition of the RVs at issue.

These documents were arguably required to be provided or identified in initial or supplemental disclosures given Optimum's Third Affirmative Defense that it "did not cause any of Plaintiffs' damages." (R. Doc. 56 at 4). But even if the documents were not required to be disclosed, the Court finds that Plaintiffs have established that this discovery will plausibly create a genuine issue of material fact regarding Optimum's knowledge of the condition of the RVs at the time of purchase and the time of transfer. While Plaintiffs could have been more diligent in seeking this information in discovery, they timely moved for the production of these documents prior to the close of discovery and shortly after completing appropriate depositions.

The Court orders[9] Optimum to provide Plaintiffs with the purchase and inventory documents described above, within 14 days of the date of this Order.

### d.    U.S. Carriers Contract

Plaintiffs seek a copy of any contract between Optimum and U.S. Carriers. (R. Doc. 67 at 4). Plaintiffs argue that such a contract is responsive to Request for Production No. 3, and is relevant to establish the relationship between Optimum and U.S. Carriers, as well as to determine the knowledge of both entities regarding the condition of the RVs. (R. Doc. 67 at 4).

---

[9] Fed. R. Civ. P. 56(d)(3).

The U.S. Carriers Contract is not a communication that falls within the scope of Request for Production No. 3. That said, Optimum should have identified U.S. Carriers, as well as its contract with U.S. Carriers, in its initial or supplemental disclosures. Indeed, in summary judgment, Optimum argues that it "shifted the duty to control and maintain the RVs to U.S. Carrier" through such a contract. (R. Doc. 69-2 at 7). The U.S. Carriers contract also may be used to support Optimum's Fifth Affirmative Defense, which provides that it is "not in contractual privity with defendant Zodiak and Zodiak is not otherwise an agent, employee, or independent contractor" of Optimum. (R. Doc. 56 at 4).

Accordingly, the Court will allow Plaintiff to obtain the contract between Optimum and U.S. Carriers pertaining to the transfer of the RVs at issue. Even if the U.S. Carriers contract was not required to be disclosed in initial or supplemental disclosures, the record shows that Plaintiffs did not learn the identity of U.S. Carriers until the December 11, 2025 depositions. This document will plausibly create a genuine issue of material fact regarding Optimum's control over the RVs at the time of transfer. While Plaintiffs could have been more diligent in seeking this information in discovery, they timely moved for the production of these documents prior to the close of discovery and shortly after completing appropriate depositions.

The Court orders[10] Optimum to provide Plaintiffs with the purchase and inventory documents described above, within 14 days of the date of this Order.

> ### e.     Documents pertaining to Dr. Tovsen's investigation of Plaintiffs' claims

Finally, Plaintiffs seek the production of documents pertaining to Dr. Tovsen's investigation of Plaintiff's claims.

---

[10] Fed. R. Civ. P. 56(d)(3).

Plaintiffs have not set forth any evidence that any investigation into Plaintiffs' claims by Dr. Tovsen resulted in the creation of any documents or communications. Optimum references testimony by Dr. Tovsen, in her capacity as Optimum's Rule 30(b)(6) representative, that she "simply testified that she investigated the allegations and reviewed the information available to her." (R. Doc. 64 at 7 n.2).

To be clear, copies of any documents or communications created with respect to Plaintiffs' claims by Dr. Tovsen (as an employee of Optimum) would be responsive to Request for Production No. 2, which seeks "Copies of any and all communications, including writings, emails, letters, text messages, posts, affidavits, and statements, of any kind, regarding in any way, plaintiffs' complaints." (R. Doc. 61-3 at 11). Optimum did not object to this discovery request. (R. Doc. 61-5 at 7). Optimum must produce any documents and communications regarding Dr. Tovsen's investigation into Plaintiffs' claims to the extent they exist. Plaintiffs will also have the opportunity to depose Dr. Tovsen in her individual capacity regarding the investigation.

### 3.    Additional Depositions

On November 21, 2025, Plaintiffs noticed the depositions of Dan Plautz, Al Buscemi, and Zodiak to take place on December 10, 2025, and the depositions of Chris Trapeni, Travis Wengler, and Optimum to take place on December 11, 2025. (R. Doc. 61-11). These individuals were identified by Defendants in Rule 26(a)(1) initial disclosures provided on April 30, 2025. (R. Doc. 61-2).

Prior to the depositions, counsel for the parties discussed potential agreements regarding the extension of the non-expert discovery deadline, accommodations for new deposition dates, and supplementation of written discovery. (R. Docs. 61-12, 61-13, 61-16).

As discussed above, Plaintiffs deposed Mr. Wengler, Mr. Trapeni, and Optimum on December 11, 2025. Plaintiffs are now seeking an order compelling (1) the depositions of Mr.

33

Plautz, Mr. Buscemi, and Zodiak; and (2) the depositions of four individuals identified at the December 11, 2025 depositions: Dr. Marni Tovsen (Optimum's Human Resources Director and consultant of U.S. Carriers); Kari "Kat" Rowling (employee of U.S. Carriers); Jamie Mangold (employee of Optimum); and Denver Beck (CEO of Optimum).

### a. Zodiak, Buscemi, and Plautz

The record indicates that Zodiak agreed to proceed with the depositions of Mr. Buscemi, Mr. Plautz, and the Rule 30(b)(6) deposition of Zodiak on January 12, 2026. (*See* R. Doc. 62 at 3). To the extent these depositions have not occurred, the parties shall coordinate and complete these depositions by the deadline set below.

### b. Dr. Tovsen and Ms. Rowling

Plaintiffs seek an order compelling the depositions of Dr. Tovsen (in her individual capacity) and Ms. Rowling (an employee of U.S. Carriers).

In its Fourth Affirmative Defense, Optimum asserts that "Plaintiffs' claims are barred, in whole or in part, because [Optimum] did not direct, control, or authorize the actions of defendant Zodiak and Zodiak is not otherwise an agent, employee, or independent contractor of" Optimum. (R. Doc. 56 at 4). Plaintiffs represent that Mr. Trapeni and Mr. Wengler "testified Zodiak sent its invoices for the RV's to U.S. Carriers," with Mr. Trapeni further claiming that "he did not know who he worked for." (R. Doc. 61-1 at 12). Plaintiffs further represent that Dr. Tovsen, in her capacity as the Optimum corporate representative, testified that she is the Human Resources Director and Risk Manager for Optimum. In addition, she testified that she consults for U.S. Carriers, supervising Ms. Rowling, who appears to work for U.S. Carriers and dispatches the RVs. Based on the foregoing, the Court will provide Plaintiffs the opportunity to depose Dr. Tovsen and Ms. Rowling.

As stated above, Optimum should have identified U.S. Carriers in its Rule 26(a)(1) disclosures. There is no dispute that U.S. Carriers (1) contracted with Optimum with respect to the transport of the RVs; (2) Dr. Tovsen serves as a consultant of U.S. Carriers and supervisors Ms. Rowling; and (3) U.S. Carriers is located at the same business address as Optimum. Given the foregoing, the Court will provide Plaintiffs the opportunity to proceed with depositions of Dr. Tovsen and Ms. Rowling.

To be clear, Plaintiffs timely sought an extension of the discovery deadline for the purposes of taking these depositions. (*See* R. Doc. 61). The Court finds good cause pursuant to Rule 16(b)(4) to extend the discovery deadline for the purpose of allowing Plaintiffs the opportunity to conduct these depositions will plausibly create a genuine issue of material fact regarding Optimum's control over the RVs at the time of transfer.

### c.    Mr. Mangold and Mr. Beck

Plaintiffs have not, however, set forth sufficient information in support of allowing the depositions of Mr. Mangold and Mr. Beck to proceed after the close of discovery.

In support of an order compelling their depositions (or allowing them to proceed), Plaintiffs merely state the following:

> Mr. Mangold was identified by Mr. Wengler as having knowledge about the condition and location of the RV's. Mr. Beck was identified as being directly involved in the purchase of the RV's for which Mr. Trapeni, Mr. Wengler, and Dr. Tovsen in the Fed.R.Civ.P. Rule 30(b)(6) deposition could not identify where the RV's were located or who they were purchased from. This is a critical issue in this case. Therefore, Fed.R.Civ.P. Rule 26 permits plaintiffs to depose these individuals. They should be compelled to appear as defendants refuse to produce them and/or consent to their depositions.

(R. Doc. 61-1 at 12).

In opposition, Optimum explains that Mr. Beck is its CEO. Optimum directs the Court to Mr. Wengler's testimony in support of a finding that Mr. Beck had no personal involvement of

35

the purchase of the RVs, other than general knowledge because he reviews the company's inventory. (R. Doc. 64 at 8). Optimum argues that the "apex doctrine' precludes the deposition given that "lower-level employees and corporate representatives can testify to the same knowledge." (R. Doc. 64 at 9).

"There is no Fifth Circuit precedent which applies the apex deposition doctrine strictly prohibiting the deposition of high level executives. In fact, Federal Courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case." *McGee v. Arkel Int'l, LLC*, No. 08-4704, 2013 WL 12228710, at *3 (E.D. La. Aug. 9, 2013) (citations omitted); *see Bachemin by & Through Bachemin v. DDMS, LLC*, No. 22-1976, 2023 WL 7280515, at *12 (E.D. La. Nov. 3, 2023) ("There is no Fifth Circuit law which applies the apex doctrine to strictly prohibit the deposition of high-level, or apex, executives."). "Instead, in the Fifth Circuit, courts typically permit an apex deposition so long as the party seeking that deposition has first taken a 30(b)(6) deposition or deposed other 'lower ranking employees with more direct knowledge of the relevant facts.' " *Lewis v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 21-198-SM-RLB, 2023 WL 7251507, at *2 (M.D. La. Nov. 2, 2023) (quoting *Wilco Marsh Buggies & Draglines, Inc. v. Weeks Marine, Inc.*, 20-3135, 2022 WL 742443, at *4 (E.D. La. Mar. 11, 2022)); *see also Entergy Gulf States Louisiana, L.L.C. v. Louisiana Generating, L.L.*C., No. 14-385-SDD-RLB, 2021 WL 24686, at *8 (M.D. La. Jan. 4, 2021) (permitting "apex" witness deposition without first requiring a Rule 30(b)(6) deposition); *Texas v. Google LLC*, 347 F.R.D. 490, 497 (E.D. Tex. 2024) ("The prioritized completion of lower-ranking-employee depositions, or Rule 30(b)(6) corporate representative depositions, may either obviate any need for the 'apex' executive's deposition, or alternatively narrow the scope of the apex executive's deposition.").

Plaintiffs had the opportunity to take the Rule 30(b)(6) deposition of Optimum, as well as the depositions of Mr. Trapeni and Mr. Wengler. Plaintiffs have not set forth any specific testimony or documents identifying Mr. Beck as having any unique personal knowledge regarding the purchase, condition, or transport of the RVs at issue. Accordingly, the Court does not find good cause for extending the discovery deadline for the purpose of allowing Plaintiffs to obtain the deposition. Plaintiffs have not otherwise set forth a plausible basis in support of a finding that Mr. Beck's deposition would result in the any additional unique discovery necessary to oppose the pending Rule 56 motions.

Similarly, while Plaintiffs assert that Mr. Mangold is a member of the "senior leadership team," they do not set forth any specific testimony or documents identifying Mr. Mangold as having any unique personal knowledge regarding the purchase, condition, or transport of the RVs at issue.[11] At most, Plaintiffs direct the Court to testimony in support of a finding that "Mr. Mangold provided the authority for the purchase of the RV's and the number of RV's to purchase." (R. Doc. 70-2 at 6). Plaintiffs do not explain, however, how the deposition of Mr. Mangold will lead to the discovery of any unique information not already obtained in the depositions of Optimum, Mr. Trapeni, and Mr. Wengler.

Given the record, the Court finds no basis for allowing the deposition of Mr. Mangold to proceed pursuant to either Rule 16(b)(4) or Rule 56(d).

## III.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Optimum Dealership Group, LLC's Motion to Compel Additional Production, Adequate Discovery Responses, and Privilege Log (R. Doc. 60) is **GRANTED IN**

---

[11] Optimum identifies Mr. Mangold as an "Optimum executive." (R. Doc. 73 at 2).

**PART** and **DENIED IN PART**. Plaintiffs shall provide supplemental responses consistent with the body of this Order within **14 days** of the date of this Order, or as otherwise agreed upon by the parties. Defendants may seek leave to supplement their Motions for Summary Judgment, as applicable, with respect to any additional discovery obtained.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel with Request for Incidental Relief and Extend Discovery Deadlines (R. Doc. 61) and Motion for Relief under Fed. R. Civ. P. Rule 56(d) (R. Doc. 70) are **GRANTED IN PART** and **DENIED IN PART**. Defendants shall provide supplemental responses consistent with the body of this Order within **14 days** of the date of this Order, or as otherwise agreed upon by the parties.

**IT IS FURTHER ORDERED** that the non-expert discovery deadline is extended to **May 22, 2026** for the purpose of providing Plaintiffs with the opportunity to secure the depositions and other discovery allowed by the body of this Order.  No other discovery will be allowed.

**IT IS FURTHER ORDERED** that Plaintiffs' deadline to oppose the pending Motions for Summary Judgment (R. Docs. 68, 69) is extended to **June 5, 2026.**

**IT IS FURTHER ORDERED** that the Court finds good cause, in light of the foregoing deadlines, to modify the Scheduling Order (R. Doc. 33) as follow:

- Deadline to file pre-trial order: **August 14, 2026**.

- Deadline to file motions in limine: **September 11, 2026**.

- Deadline to file an affidavit of settlement efforts: **September 25, 2026**.

- Pre-trial conference date: **September 1, 2026** at **2:00 p.m.** in the chambers of the Honorable Richard L. Bourgeois, Jr.

- Deadline to submit joint jury instructions, voir dire, and verdict forms to the presiding judge: **October 13, 2026**.

- A **4-day jury trial** is scheduled for **9:00 a.m.** beginning on **November 2, 2026** in Courtroom 6.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on March 31, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**