**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEVE MILLER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-180-RLB** |
| **ZODIAK TRANSPORTATION LOGISTICS & SOLUTIONS, LLC, ET AL.** | **CONSENT** |

# ORDER

Before the Court is Plaintiffs' Reurged Motion to Compel Denver Beck's Deposition and for Contempt under Fed. R. Civ. P. Rule 37(b)(2)(A) with Request for Incidental Relief and Extend Discovery Deadline ("Motion to Compel and for Contempt"). (R. Doc. 79). The motion is opposed. (R. Docs. 88, 89).

Also before the Court is Plaintiffs' Second Motion for Relief under Fed. R. Civ. P. Rule 52(d) ("Second Rule 52(d) Motion"). (R. Doc. 80). The motion is opposed. (R. Docs. 95, 96).

Also before the Court is Optimum Dealership Group, LLC's Motion for Protective Order. (R. Doc. 88). The motion is opposed. (R. Doc. 97).

## I. Background

On or about January 27, 2025, Steve Miller and Lisa Miller (collectively, "Plaintiffs") initiated this action by filing a Petition in State Court, naming Zodiak Transportation Logistics & Solutions, LLC ("Zodiak") and Optimum Dealership Group, LLC d/b/a Optimum RV ("Optimum" or "Optimum Dealership Group") as defendants in a nuisance action involving the placement of approximately 80 vacant recreation vehicles (RVs) on a lot adjacent to Plaintiffs' property. (R. Doc. 1-2).

The defendants removed the action, asserting this Court can properly exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1).

After the denial of Defendants' Rule 12(b) motions, Plaintiffs filed a Second Supplemental, Amending, and Restated Complaint (R. Doc. 46, "Second Amended Complaint"). In relevant part, Plaintiffs allege that on February 28, 2024, Zodiak, at the "direction of and with full authority delegated to it by defendant Optimum," began transporting and depositing the RVs – which were "infested with rats, vermin of various kinds, fleas, and roaches" and caused ruts on Plaintiffs' property during transport – onto a lot adjacent to Plaintiffs' property in Plaquemine, Louisiana. (Sec. Am. Compl. ¶ 4). After a hot shot driver employed by Zodiak informed Mrs. Miller that the RVs are owned by Optimum, she engaged in various communications with Chris Trapeni, the alleged Chief Operating Officer (COO) for Optimum, regarding the storage of, and damage caused by, the RVs. (Sec. Am. Compl.¶¶ 5a-d). Plaintiffs seek recovery for nuisance pursuant to Louisiana Civil Code articles 667, 668, and 669; damage caused by ruin, vice, or defect in things pursuant to Louisiana Civil Code article 2317.1; and trespass pursuant to Louisiana Civil Code article 2315. (Sec. Am. Compl. ¶ 9).

In response, Optimum and Zodiak filed Answers. (R. Docs. 56, 57). Optimum's Third Affirmative Defense states that it "did not cause any of Plaintiffs' damages"; its Fourth Affirmative Defense states that it "did not direct, control, or authorize the actions of Zodiak"; and its Fifth Affirmative Defense provides that it is "not in contractual privity with defendant Zodiak and Zodiak is not otherwise an agent, employee, or independent contractor" of Optimum. (R. Doc. 56 at 4).

On January 30, 2026, Zodiak and Optimum filed Motions for Summary Judgment. (R. Docs. 68, 69).[1] Optimum asserts that the claims against it should be dismissed because Plaintiffs cannot demonstrate that Optimum had control over Zodiak's transportation of the RVs, Optimum

[1] Plaintiffs did not move for summary judgment.

did not direct the transportation of the RVs, and Optimum did not derive any property rights from Rodney Willis or Rodney Willis Only, LLC. (R. Docs. 69-2 at 6-7, 9). Optimum asserts that it lacked the necessary garde over the RVs in light of its contract with U.S. Carriers, which it now contends facilitated the transportation of the RVs. (R. Doc. 69-2 at 7-8). Both Optimum and Zodiak also seek summary judgment on the basis that Plaintiffs lack evidence that the alleged vermin, rats, and fleas came from the RVs. (R. Doc. 69-2 at 8, 11-13; R. Doc. 68-2 at 12-13).

Plaintiffs filed a Motion to Compel filed on the deadline to complete discovery, as well as a Rule 56(d) Motion, which collectively sought an order compelling (1) additional discovery regarding potential trial witnesses and documents, (2) additional documents identified at the Optimum depositions, and (3) the depositions of the following individuals and entities: Dan Plautz, Chief Financial Officer and Director of Operations at Zodiak; Al Buscemi of Zodiak; Zodiak; Dr. Marni Tovsen (Optimum's Human Resources Director and consultant of U.S. Carriers); Kari "Kat" Rohlwing[2] (employee of U.S. Carriers); Jamie Mangold (employee of Optimum); and Denver Beck (CEO of Optimum). (R. Docs. 61, 70). In light of these discovery motions, as well as a Motion to Compel filed by Optimum, the Court continued Plaintiffs' deadline to oppose the Motions for Summary Judgment until resolution of the discovery motions. (R. Doc. 71).

On March 31, 2026, the Court granted Plaintiffs' discovery motions in part, ordered Defendants to provide certain supplemental responses, and allowed Plaintiffs to proceed will all of the requested depositions except for those of Mr. Mangold and Mr. Beck. (*See* R. Doc. 75). The Court provided the parties until May 22, 2026 to complete this additional discovery,

[2] Plaintiffs previously identified this individual's surname as "Rowling." (*See* R. Doc. 61 at 1).

informed the parties that "No other discovery will be allowed," and set a deadline for Plaintiffs to oppose the pending Motions for Summary Judgment. (R. Doc. 75 at 38).

On June 5, 2026, Plaintiffs timely filed a combined response to the pending Motions for Summary Judgment. (R. Doc. 82).[3]

Prior to opposing the Motions for Summary Judgment, however, Plaintiffs filed their Motion to Compel and for Contempt and Second Rule 56(d) Motion, which respectively seek variations of the same relief: (1) an order "compelling the deposition of defendant Optimum's CEO Denver, holding defendant Optimum in contempt for failing to supplement all responsive documents in response to the Court's Order compelling production of discovery and awarding plaintiffs incidental relief, including striking defendants' affirmative defenses, documents, and witnesses, and extending the discovery deadline" (R. Doc. 79 at 1), and (2) an order permitting Plaintiffs "to conduct limited discovery, namely depose Denver Beck and obtain all documents responsive to the Court's March 31, 2026, Order relating to the RV's actually on the plaintiffs' property and/or Willis Only property, before any [dispositive] motion filed by the defendants may be heard and/or considered" (R. Doc. 80-1).

In addition to opposing this relief, Optimum filed a Motion for Protective Order with respect to Plaintiffs' renewed attempt to depose Optimum's CEO, Mr. Beck. (R. Doc. 88; *see* R. Docs. 95). While Plaintiffs do not specifically seek any relief with respect to Zodiak, that defendant filed its own oppositions to Plaintiffs' discovery motions. (R. Docs. 89, 96).

---

[3] Defendants filed reply memoranda. (R. Docs. 93, 98). The Court provided Plaintiffs leave to file a sur-reply memorandum (R. Doc. 101; *see* R. Doc. 102). Accordingly, the pending dispositive motions are fully briefed.

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 37 of the Federal Rules of Civil Procedure provides for the imposition of sanctions against a party who fails to obey an order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A). Appropriate sanctions include the following:

> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> **(iii)** striking pleadings in whole or in part;
> **(iv)** staying further proceedings until the order is obeyed;
> **(v)** dismissing the action or proceeding in whole or in part;
> **(vi)** rendering a default judgment against the disobedient party; or
> **(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). Instead of or in addition to these permitted sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also* Fed. R. Civ. P. 37(d)(1)(A)(ii) (providing that the court may order sanctions if "a party, after being served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.").

Under Rule 56(d), if the non-moving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d). Rule 56(d) provides a tool to keep open the doors of discovery in order to adequately oppose a summary judgment motion. *Six Flags Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009). A party seeking additional discovery pursuant to Rule 56(d) must show: (1) how that discovery will create a genuine issue of material fact; and (2) that the movant exercised due

diligence in discovery. *Id.*; *Culwell v. City of Fort Worth*, 468 F.3d 868, 871-73 (5th Cir. 2006); *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005).

District courts have discretion to grant or deny a Rule 56(d) motion. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citing *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). "Rule 56(d) motions for additional discovery 'are broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561). "Nevertheless, nonmoving parties requesting Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561). "Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561).

**B. Analysis**

**1. Purchase and Inventory Records**

In their first Motion to Compel and Rule 56(d) Motion, Plaintiffs sought the production of purchase and inventory records, including inventory notes and lists identified at the depositions taken just days prior to the discovery deadline. (R. Doc. 67 at 3-4, 6-7).

Mr. Trapeni testified that Optimum purchased 700 RVs from the Federal Emergency Management Agency ("FEMA") at auction, and those RVs were sent to various Optimum dealerships through U.S. Carriers. (*See* R. Doc. 67-2). Plaintiffs argued that purchase and inventory records regarding the RVs were responsive to specific Requests for Production, and

were "relevant to establish the condition of the RV's at the time they were purchased and what was known by the defendant about their condition. . . ." (R. Doc. 67 at 3).

In the March 31, 2026 Order, the Court disagreed that the document requests were responsive to Plaintiffs' Requests for Production, but nevertheless required Optimum to produce purchase and inventory documents pursuant to Rule 56(d)(3). The Court concluded that this information was relevant to Optimum's ownership and control over the RVs, as well as its knowledge of the condition of the RVs at the time of purchase and delivery. The Court's Order provided that the production must include the following:

- Purchase records pertaining to the RVs at issue, including any bills of sale, purchase agreements, or records from the FEMA auction; and

- Inventory records pertaining to the RVs at issue, including records pertaining to the condition of the RVs and any maintenance, repair, or inspection records.

(R. Doc. 75 at 31). Furthermore, the Order required that the produced "documents shall include any records of the locations (*i.e.*, Optimum RV dealerships or otherwise) where the RVs were transferred after being temporarily stored on or adjacent to the Plaintiffs' property at the times at issue in this litigation. The production shall also include any communications or complaints from customers regarding the condition of the RVs at issue." (R. Doc. 75 at 31).

On April 14, 2026, Optimum provided a supplemental production to comply with the foregoing Order. The email communication providing these responses stated the following:

> Below is a link to Optimum's supplemental production. Because Optimum was not involved in the transportation of the RVs, we were unable to confirm which of the RVs were stored at the lot adjacent to the Millers' property. To ensure compliance with the Court's order, we have produced records for all RVs that were delivered to Optimum by Zodiak after the Millers first noted storage of RVs on the adjacent property. This ensures that records are produced for all RVs that potentially could have been stored on the adjacent property, but will also necessarily mean that non-responsive records are produced for RVs that were not. To the extent necessary or desired, we recommend Plaintiffs confirm the storage location for each RV with a source that has knowledge.

(R. Doc. 79-7 at 17). According to Plaintiffs, this production consisted of "hundreds of pages individual pdf's without any itemization of what the documents are or how they are responsive to plaintiffs' requests and the Court's Order." (R. Doc. 79-1 at 3; *see* R. Doc. 80-5).

The individual depositions of Dr. Tovsen and Ms. Rohlwing of U.S. Carriers took place on May 13, 2026. (*See* R. Docs. 79-9, 79-10). According to Plaintiffs, these deponents were unable to confirm the specific RVs stored at the adjacent Willis Only property. At the deposition of Dr. Tovsen, Plaintiffs' counsel requested supplementation of certain photographs identified on the service history reports produced by Optimum. (R. Doc. 80 at 5). While Plaintiffs state that they initially received 80 photographs, they have since confirmed that Optimum produced hundreds of photographs on May 21, 2026. (R. Doc.79 at 5; *see* R. Doc. 80-2 at 5-6).

Plaintiffs now argue that Optimum's production does not comply with the March 31, 2026 Order because it does not provide information to allow Plaintiffs "to identify the records associated with the RV's actually stored in the Willis Only property." (R. Doc. 79 at 3). Plaintiffs argue that the Order "did not contemplate a document dump of records associated with RVs which were not even stored at plaintiff's property and property adjacent to plaintiffs – only for plaintiffs to guess which ones relate to the subject RVs." (R Doc. 80-2 at 3). In addition to renewed relief sought pursuant to Rule 56(d), Plaintiffs argue that Optimum failed to comply with the Order and, accordingly, relief is warranted pursuant to Rule 37(b)(2)(A). (R. Doc 79-1 at 7-8).

In opposition, Optimum represents that it "does not know which particular RVs Zodiak stored at the property adjacent to Plaintiffs' property," and so it "produced records for any RV that *could* have been stored there." (R. Doc. 88 at 2-3). In compiling its production, Optimum represents that it "cross-referenced its service records with the transportation records Zodiak

produce in this litigation [which identify which RVs it transported and the date of delivery]" and "then compiled service records for all RVs that Zodiak delivered after the date Plaintiffs reported RVs in the lot next to theirs" to identity and produce "records for every RV that could possibility be at issue in this lawsuit." (R. Doc. 88 at 3). Optimum represents that it produced the documents "in the same manner that Optimum maintains them in the ordinary course of business" pursuant to Rule 34(b)(2)(E), and further represents that "each service record was titled to include the subject RV's VIN number, allowing for easy identification of each document and for the VINs to be readily cross-referenced with other documents produce in this litigation." (R. Doc. 88 at 3).

In short, Optimum essentially represents that it does not have in its possession, custody, or control documents or information identifying "which RVs Zodiak stored at the property" adjacent to Plaintiffs' property. (R. Doc. 88 at 4). This representation is consistent with the deposition testimony of Mr. Trapeni, Travis Wengler, Wholesale Manager of Optimum, and Dr. Tovsen (in her capacity as Optimum's corporate representative). (*See* R. Docs. 88-2, 88-3, and 88-4). Similarly, Mr. Plautz, CFO and Director of Operations at Zodiak, testified that he was unaware of any particular document that would identify which of the RVs were placed on the adjacent lot and that date of delivery would provide the best "guesstimate." (*See* R. Doc. 88-1). Finally, Plaintiffs represents that both Ms. Rohlwing and Dr. Tovsen "were unable to identify the RVs stored on the plaintiffs' property or property adjacent to plaintiffs" at this depositions. (R. Doc. 80-2 at 3) (citing R. Docs. 80-3, 80-4).[4]

The record shows that Plaintiffs have been unable to obtain evidence from Optimum (the alleged owner of the RVs), U.S. Carriers (the alleged facilitator of the transportation of the RVs),

[4] Plaintiffs assert that these individuals were unable to identify the RVs based upon a review of the supplemental documents produced by Optimum. Plaintiffs also had an opportunity to question these individuals regarding their own specific knowledge of the identity of the specific RVs. Plaintiffs did not seek the Rule 30(b)(6) deposition of U.S. Carriers.

and Zodiak (the alleged transporter of the RVs) identifying the specific RVs that were stored at the adjacent Willis Only property. Plaintiffs argue that Optimum's position that it cannot produce discovery demonstrating which RVs were actually located on the adjacent property is inconsistent with Optimum's arguments in support of summary judgment. (*See* R. Doc. 79-1 at 8). While the lack of such evidence may preclude a finding of summary judgment in favor of Optimum (given the existence of genuine disputes of material fact regarding the ownership, control, and condition of the RVs stored on the adjacent property),[5] the Court cannot require Optimum to produce documents and information it does not have in its possession, custody, or control. *See BRH Consultants, Inc. v. Agent All. Ins. Co.*, No. 23-489, 2024 WL 5398594, at *3 (M.D. La. Aug. 20, 2024) ("This Court will not compel a party to produce documents that are not in its 'possession, custody, or control.'") (quoting Fed. R. Civ. P. 34(a)(1)); *see* also *Payne v. Forest River, Inc.*, No. 13-679, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015) ("The court cannot order the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party."); *Pierce v. Town of Golden Meadow*, No. 25-2178, 2026 WL 1328213, at *3 (E.D. La., 2026) ("The Court cannot compel a party to produce documents that do not exist.").

The record supports a finding that Optimum complied with the Court's order requiring it to produce purchase and inventory records regarding the RVs at issue. Optimum represents that it has produced all responsive documents pertaining to RVs that could have possibility been stored at the adjacent Willis Only property, but is unable to identify the specific RVs that were located there. While the supplemental document production appears to be overinclusive, it will

[5] The Court has not ruled on the pending Motions for Summary Judgment, which will be considered after resolution of the instant discovery disputes.

contain the universe of documents with respect to the RVs that were stored on the adjacent Willis Only property.

Given the record, however, the Court will require Optimum to supplement its production with a verification providing that, after a diligent search, it has produced all purchase and inventory records in its possession, custody, or control as ordered by the Court, and that it does not have possession, custody, or control of any documents or information indicating the specific RVs that were stored on the Willis Only property. *See Informd, LLC v. DocRX, Inc.*, No. 16-83, 2016 WL 7478962, at *5 (M.D. La. Dec. 29, 2016) (requiring submission of a verification "[t]o the extent documents responsive to these requests do not exist, have never existed, and/or are not in [the non-party's] possession, custody, or control").

The Court also finds no basis for awarding any additional relief in light of Optimum's supplemental production of photographs related to service records.[6] Optimum represents that the "supplemental production included folders for each RV and includes pictures identifying the VIN numbers." (R.. Doc 88 at 4). This information is sufficient for Plaintiffs to identify the particular RVs related to each photograph.

Accordingly, the Court will not award Plaintiffs sanctions pursuant to Rule 37(b)(2)(A), or further relief with respect to the underlying documents pursuant to Rule 56(d), with respect to the produced purchase and investors records, or any other documents ordered produce in the March 31, 2026, Order. To the extent Plaintiffs are seeking an order compelling the production of additional documents not previously ordered by the Court to be produced, the Court will deny such relief as untimely.

[6] It is unclear what relief Plaintiffs are seeking with respect to these photographs other than additional information linking these photographs to the specific RVs at issue.

### 2. Plaintiffs' Renewed Rule 56(d) Request to Depose Denver Beck

In his first Rule 56(d) motion, Plaintiffs sought the deposition of Mr. Beck (and Mr. Mangold) based on the following assertion:

> Mr. Mangold was identified by Mr. Wengler as having knowledge about the condition and location of the RV's. Mr. Beck was identified as being directly involved in the purchase of the RV's for which Mr. Trapeni, Mr. Wengler, and Dr. Tovsen in the Fed.R.Civ.P. Rule 30(b)(6) deposition could not identify where the RV's were located or who they were purchased from. This is a critical issue in this case. Therefore, Fed.R.Civ.P. Rule 26 permits plaintiffs to depose these individuals. They should be compelled to appear as defendants refuse to produce them and/or consent to their depositions.

(R. Doc. 61-1 at 12). Optimum opposed the deposition of Mr. Beck based upon the "apex doctrine," asserting that Mr. Wengler's testimony supported a finding that Mr. Beck had no personal involvement in the purchase of the RVs, other than general knowledge because he reviews the company's inventory. (R. Doc. 64 at 8-9). The Court denied Plaintiffs' motion with respect to the requested depositions, concluding that Plaintiffs did not set forth any specific testimony or documents identifying them as having "any unique personal knowledge regarding the purchase, condition, or transport of the RVs at issue." (R. Doc. 75 at 37),

In their Second Rule 56(d) Motion, Plaintiffs again seek the opportunity to take the deposition of Mr. Beck. (R. Doc. 80).[7] Having considered Plaintiffs' renewed arguments, the Court again finds no basis to require Mr. Beck to appears for a deposition for the purposes of Rule 56(d).

As stated in the Court's earlier ruling, Plaintiffs had the opportunity to take the Rule 30(b)(6) deposition of Optimum, as well as the depositions of Mr. Trapeni and Mr. Wengler.

[7] Plaintiffs also seek this relief in the context of their Motion to Compel and for Contempt. (R. Doc. 89). Any relief sought pursuant to Rule 37 is denied because (1) the Court's discovery order did not allow Mr. Beck's deposition to proceed after the discovery deadline (and, accordingly, relief pursuant to Rule 37(b)(2) is inapplicable), and (2) non-expert discovery in this action, other than that specifically allowed by the Court's previous Order is closed, and, accordingly, the relief sought is untimely outside of the context of Rule 56(d).

Plaintiffs' original Rule 56(d) motion failed to set forth any specific testimony or documents identifying Mr. Beck as having any unique personal knowledge regarding the purchase, condition, or transport of the RVs at issue. Plaintiffs failed to establish good cause for extending the deadline for the purpose of allowing this deposition to proceed and otherwise failed to set forth a plausible basis in support of a finding that Mr. Beck's deposition would result in any additional unique discovery necessary to oppose the pending Rule 56 motions.

Plaintiffs now argue that Mr. Beck's deposition is required because his name appears on the produced purchase and inventory records. (*See* R. Doc. 80-2 at 4). The Court rejected a similar argument presented by Plaintiffs in seeking to take the deposition of Jamie Mangold, an employee of Optimum. While Plaintiffs asserted that Mr. Mangold is a member of the "senior leadership team" of Optimum, they failed to set forth any specific testimony or documents identifying Mr. Mangold as having any unique personal knowledge regarding the purchase, condition, or transport of the RVs at issue. The Court rejected Plaintiffs' assertion that deposition testimony supported a finding that "Mr. Mangold provided the authority for the purchase of the RV's and the number of RV's to purchase" because Plaintiff nevertheless failed to explain how the deposition of Mr. Mangold would lead to the discovery of any unique information not already obtained in the depositions of Optimum, Mr. Trapeni, and Mr. Wengler. (R. Doc. 75 at 37) (quoting R. Doc. 70-2 at 6).

Here, the documents show, at most, that Mr. Beck co-approved (with Mr. Wengler) invoices for the transportation of certain RVs purchased by Optimum. (R. Doc. 80-5).[8] Plaintiffs have not convincingly explained how the appearance of Mr. Beck's name on these documents supports a finding that he had any personal involvement regarding the purchase and transfer of

[8] The documents contain a "Load Tender Number" identifying Mr. Wengler and Mr. Beck by their first names (*i.e.*, "Travis" and "Denver"). Some entries only have Mr. Wengler's name.

the RVs at issue. Mr. Beck has executed a Declaration, under penalty of perjury, stating, among other things, that he is "not generally involved in the purchase or sale of RVs or involved with the associated logistics of the transport of those RVs," "was not directly involved in the purchase or sale of the RVs at issue in this lawsuit," "was not directly involved in the process of transporting the RVs at issue in this lawsuit, and has "no direct knowledge of the transportation of these RVs beyond what is noted in the invoices sent to Optimum by US Carriers, LLC." (R. Doc. 88-6 at 3).

Again, Plaintiffs have not established how Mr. Beck will provide any additional testimony regarding Optimum's knowledge of the underlying RVs that was not obtained in the depositions of Optimum, Mr. Trapeni, and Mr. Wengler. The record supports a finding that Mr. Beck will testify in the same manner as other deponents working for, or representing, Optimum, U.S. Carriers, and Zodiak – lack of knowledge with respect to the actual RVs that were stored on the adjacent Willis Only property. The appearance of Mr. Beck's name on the purchase and inventory records is insufficient to conclude, at this late point in the proceeding, that Mr. Beck had firsthand knowledge regarding the RVs at issue that would influence the outcome of the pending motions for summary judgment. *See Am. Family*, 714 F.3d at 894.

The Court is also not convinced that the deposition of Mr. Beck should proceed because of his "firsthand knowledge about U.S. Carriers." (R. Doc. 80-2 at 4). The Court has already provided Plaintiffs with the opportunity to depose Dr. Tovsen (Optimum's Human Resources Director and consultant of U.S. Carriers) and Ms. Rohlwing (employee of U.S. Carriers). Plaintiffs did not previously seek to conduct the Rule 30(b)(6) deposition of U.S. Carriers and do not seek to do so now. While Dr. Tovsen has provided deposition testimony regarding Mr. Beck's involvement in the creation of U.S. Carriers, Plaintiffs do not identify how the deposition

of Mr. Beck would "present facts essential to justify" Plaintiffs' opposition to the pending motions for summary judgment. *See* Fed. R. Civ. P. 56(d).

In sum, the Court concludes that Plaintiffs have not demonstrated how the Rule 56(d) deposition of Mr. Beck (which was previously sought and denied) would plausibly create a genuine issue of material fact.

**3. Plaintiffs' Request to Extend Discovery Deadline**

As discussed above, the Court will deny Plaintiffs' relief with respect to the specific additional discovery sought. Defendants' Motions for Summary Judgment are fully briefed. Accordingly, there is no need to extend the deadlines further.

The Court notes that Plaintiffs have had sufficient time to complete discovery in this action. In addressing the parties' previous Motions to Compel (which were both filed on the deadline to complete non-expert discovery), the Court extended the non-expert discovery deadline for the sole purpose of providing Plaintiffs with the opportunity to secure depositions and other discovery allowed by the March 31, 2026 Order. (R. Doc. 75 at 28). The Court specifically informed the parties that no additional discovery would be allowed. Accordingly, to the extent Plaintiffs are seeking an order to extend the deadline to complete discovery for the purposes of conducting additional discovery not addressed prior to the expiration of the original discovery deadline, that relief is denied as untimely.

Given the record, including the approaching trial date, the Court does not find good cause to reopen discovery based on information obtained after the close of discovery. *See* Fed. R. Civ. P. 16(b)(4).

## III. Conclusion

For the foregoing reasons,

**IT IS FURTHER ORDERED** that Plaintiffs' Reurged Motion to Compel Denver Beck's Deposition and for Contempt under Fed. R. Civ. P. Rule 37(b)(2)(A) with Request for Incidental Relief and Extend Discovery Deadline (R. Doc. 79) and Plaintiffs' Second Motion for Relief under Fed. R. Civ. P. Rule 52(d) (R. Doc. 80) are **DENIED**.

**IT IS FURTHER ORDERED** that Optimum Dealership Group, LLC's Motion for Protective Order (R. Doc. 88) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on August 25, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**