**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEVE MILLER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-180-RLB** |
| **ZODIAK TRANSPORTATION LOGISTICS & SOLUTIONS, LLC, ET AL.** | **CONSENT** |

## RULING & ORDER

Before the Court are Zodiak Transportation Logistics & Solutions, LLC's ("Zodiak") Motion for Summary Judgment (R. Doc. 68) and Optimum Dealership Group, LLC's ("Optimum") Motion for Summary Judgment (R. Doc. 69).

Plaintiffs filed a Combined Memorandum in Opposition to Defendants Zodiak and Optimum's Motions for Summary Judgment. (R. Doc. 87).

Zodiak filed a Reply Memorandum (R. Doc. 93). Optimum filed a Reply Memorandum. (R. Doc. 98). Plaintiffs filed a Sur-reply Memorandum in response to Optimum's Reply Memorandum. (R. Doc. 102).

## I. Background

On or about January 27, 2025, Steve Miller and Lisa Miller (collectively, "Plaintiffs") initiated this action by filing a Petition in State Court, naming as defendants Zodiak Transportation Logistics & Solutions, LLC ("Zodiak") and Optimum Dealership Group, LLC d/b/a Optimum RV ("Optimum") (collectively, "Defendants"). (R. Doc. 1-2). Plaintiffs seek recovery under Louisiana tort law regarding the placement of approximately 80 vacant recreation vehicles (RVs) on a lot adjacent to Plaintiffs' property. (R. Doc. 1-2).

Defendants removed the action, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1).

After the denial of Defendants' Rule 12(b) motions, Plaintiffs filed a Second Supplemental, Amending, and Restated Complaint (R. Doc. 46, "Second Amended Complaint"), which is the operative pleading in this action. The following is a summary of Plaintiffs' allegations.

Plaintiffs' property, which is located in Plaquemine, Louisiana, contains a short-term rental business resulting in an average of $3,000.00/month income. (Sec. Am. Compl. ¶¶ 2-3). On February 28, 2024, Zodiak, at the "direction of and with full authority delegated to it by defendant Optimum," began transporting and depositing the RVs – which were "infested with rats, vermin of various kinds, fleas, and roaches" and caused ruts on Plaintiffs' property during transport – onto adjacent property owned by Rodney Willis Only, LLC ("Willis Only"). (Sec. Am. Comply. ¶ 4). Optimum "gave defendant Zodiak the authority to determine where the subject RV's were stored and kept" but Optimum "was ultimately in control of where and how the RV's [were] placed by defendant Zodiak." (Sec. Am. Compl. ¶ 4a). At some point, "defendant Zodiak entered into an oral lease agreement with Rodney Willis Only, LLC permitting the subject RV's to be stored and kept on the property owned by Rodney Willis Only, LLC" for two weeks, possibly a little longer," in exchange for $6,000. (Sec. Am. Compl. ¶ 4c).

A hot-shot driver employed by Zodiak informed Mrs. Miller that the RVs were owned by Optimum, resulting in various communications between Mrs. Miller and Chris Trapeni, the alleged Chief Operating Officer (COO) for Optimum, regarding the storage of, and damage caused by, the RVs. (Sec. Am. Compl.¶¶ 5a-d). At no point did Mr. Trapeni represent that the RVs were not the property of Optimum. (*See* Sec. Am. Compl. ¶¶ 5a-d).

Plaintiffs allege that the RVs created an "attractive nuisance" because they attracted individuals inquiring whether the RVs were for sale and potential thieves who "looted and

vandalized" the RVs. (Sec. Am. Compl. ¶¶ 5d, 6). Despite Plaintiffs' conversations with representatives of Optimum and Zodiak, the RVs remained in place until April 19, 2024, and further damage was caused to Plaintiffs' property at the time of their removal. (Sec. Am. Compl. ¶¶ 6a, 7). Plaintiffs also allege that "Zodiak repeatedly trespassed on [their] properties, including leaving feces, urine, trash, ruts, and debris" on the property. (Sec. Am. Compl. ¶ 9).

Plaintiffs seek recovery for nuisance pursuant to Louisiana Civil Code articles 667, 668, and 669; custodial liability for damage caused by ruin, vice, or defect in things pursuant to Louisiana Civil Code article 2317.1; and trespass pursuant to Louisiana Civil Code article 2315. (Sec. Am. Compl. ¶ 9). Plaintiffs allege that "the infestation of vermin from defendants' vehicles and subject RVs, hazardous conditions, ruin, vice, and defect in the RVs and as they were in deplorable condition, including being infested with fleas and vermin, and nuisance activities have rendered their short-term rental property uninhabitable and it is therefore no longer producing any rent or income and is now vacant." (Sec. Am. Compl. ¶ 10). Among other things, Plaintiffs seek recovery for physical injuries, trespass, loss of use of their property, permanent impairment of use of their property, pollution of their property, diminution in value of their property, severe emotional distress and mental anguish, past and future lost wages and earnings, and past and future enjoyment and peaceable possession of their property. (Sec. Am. Compl. ¶ 11).

On January 30, 2026, Zodiak and Optimum filed their Motions for Summary Judgment. (R. Docs. 68, 69).[1]

Zodiak seeks judgment as a matter of law with respect to all claims brought against it. (R. Doc. 68). First, Zodiak argues that Plaintiffs' trespass claims fail as a matter of law because

[1] Plaintiffs did not move for summary judgment.

Zodiak is not liable for any alleged trespass by hot-shot drivers, who were independent contractors hired to transport the RVs, or by general members of the community. (R. Doc. 68-2 at 10-11). Next, Zodiak argues that Plaintiffs' nuisance and custodial liability claims fail because Plaintiffs cannot show that the placement of the RVs on the adjacent Willis Only property was a cause in fact of their injuries. (R. Doc. 68-2 at 12-14). Zodiak argues that Plaintiffs have not, and cannot, present any factual evidence "that a single flea, roach, rat, or mouse" was brought onto the adjacent Willis Only property by Zodiak and have not presented any expert testimony in support of their pest invasion theory of liability. Finally, Zodiak argues that Plaintiffs' claims fail because any ruts caused by trespass have resolved naturally over time, any infestation-related damages were incurred by Plaintiffs' limited liability company, S&L Bayou Rental, LLC ("Bayou Rental"), and Plaintiffs have no right to recovery for emotional distress and mental anguish. (R. Doc. 68-2 at 15).

Optimum similarly seeks judgment as a matter of law with respect to all claims brought against it. (R. Doc. 69). First, Optimum argues that Plaintiffs' trespass claims fail as a matter of law because Plaintiffs have not demonstrated that Optimum retained any operational control over Zodiak, which in turn was an independent contractor hired by the non-party U.S Carriers for the transport of the RVs. (R. Doc. 69-2 at 4-6). Next, Optimum argues that Plaintiffs' custodial liability claims fail because Plaintiffs cannot show that Optimum had custody or *garde* over the RVs because Optimum had shifted the duty to control and maintain the RVs to U.S. Carriers, and Optimum otherwise lacked any knowledge of the alleged defects in the RVs. (R. Doc. 69-2 at 6-9). Optimum then argues that Plaintiffs' nuisance claims fail because Optimum was not a proprietor who derived any property rights from Willis Only, or its owner Rodney Willis, given

its lack of any contract with them. (R. Docs. 69-2 at 6-10). Finally, Optimum argues that Plaintiff cannot establish causation or damages based upon the record. (R. Doc. 69-2 at 10-16).

In response to these dispositive motions, Plaintiffs sought additional discovery pursuant to Rule 56(d) – as well as an earlier filed motion to compel – which collectively sought an order compelling (1) additional discovery regarding potential trial witnesses and documents, (2) additional documents identified at the Optimum depositions, and (3) the depositions of the following individuals and entities: Dan Plautz, Chief Financial Officer and Director of Operations at Zodiak; Al Buscemi of Zodiak; Zodiak; Dr. Marni Tovsen (Optimum's Human Resources Director and consultant of U.S. Carriers); Kari "Kat" Rohlwing[2] (employee of U.S. Carriers); Jamie Mangold (employee of Optimum); and Denver Beck (CEO of Optimum). (R. Docs. 61, 70). In light of Plaintiffs' motions, as well as a discovery motion filed by Optimum, the Court continued Plaintiffs' deadline to oppose the Motions for Summary Judgment until resolution of the foregoing discovery motions. (R. Doc. 71).

On March 31, 2026, the Court granted Plaintiffs' discovery motions in part, ordered Defendants to provide certain supplemental responses, allowed Plaintiffs to proceed with the requested depositions except for those of Mr. Mangold and Mr. Beck, and set a deadline for Plaintiffs to oppose the Motions for Summary Judgment. (*See* R. Doc. 75).

On June 5, 2026, Plaintiffs timely filed a Combined Memorandum in Opposition to the pending Motions for Summary Judgment. (R. Doc. 87). In support of this opposition, Plaintiffs argue that Defendants failed to meet their initial burden of proof under Rule 56(c)(1)(A) to identify summary judgment evidence demonstrating the absence of a genuine issue of material fact. (R. Doc. 87 at 15-17).

---

[2] Plaintiffs previously identified this individual's surname as "Rowling." (*See* R. Doc. 61 at 1).

More specifically, Plaintiffs argue that their claims against Zodiak survive because there is "significant record evidence that the massive infestations came from and were caused by the RVs and the conditions present therein," and the doctrine of *res ipsa loquitor* otherwise applies and precludes summary judgment on the issue of causation. (R. Doc. 87 at 17-21). Plaintiffs then argue that the record establishes that Zodiak had the right to control and direct the hot shot drivers, who should therefore be considered employees and not independent contractors for the purposes of the trespass claims. (R. Doc. 87 at 21-23).

With respect to Optimum, Plaintiffs argue that their custodial liability claims survive because Optimum cannot establish that it did not have custody or *garde* over its RVs given there is no written contract between U.S. Carriers and Optimum transferring custody and control over the RVs. (R. Doc. 87 at 23-26). Plaintiffs further argue that Optimum's own records establish that it knew of the deplorable condition of the RVs (including the presence of fleas and rats) before or at the time they were transported. (R. Doc. 87 at 26-27). In support of their nuisance claims and trespass claims, Plaintiffs respectively argue that Optimum derived the right to have the RVs deposited on the adjacent property from Mr. Willis on behalf of Willis Only and exercised operational control over the RVs. (R. Doc. 87 at 27-28). Plaintiffs further argue that Bayou Rentals exists "to insulate the plaintiffs from potential personal liability for any damage suffered by a guest while staying at the property," and that the profits and losses from the short-term rentals are incurred by Plaintiffs alone. (R. Doc. 87 at 29-30). Finally, Plaintiffs argue that they have and can establish compensatory losses. (R. Doc. 87 at 30-32).

Zodiak argues in its Reply Memorandum that Plaintiffs' claims fail because: (1) they did not submit any contemporaneous evidence of an active pest infestation in any of the RVs; (2) they do not and cannot contradict the sworn declaration of Mr. Willis providing that he inspected

and saw no pests in the RVs at issue; and (3) they have not submitted any expert testimony in support of a finding of an infestation. (R. Doc. 93).

Optimum argues in its Reply Memorandum that Plaintiffs' claims fail because: (1) they cannot establish that Optimum had operational control over Zodiak; (2) they cannot establish that Optimum had custody or *garde* over the RVs at the time they were on the adjacent property; (3) there is no evidence of causation, and (4) Plaintiffs lack standing to recover Bayou Rental's lost income. (R. Doc. 98). Plaintiffs respond with a Surreply Memorandum arguing, once again, that they can establish at trial that Optimum had operational control over Zodiak, custody or *garde* over the RVs, causation, and that the profits and losses associated with the short-term rental are borne by Plaintiffs. (R. Doc. 102).

After filing their Combined Opposition, Plaintiffs filed a renewed Motion to Compel (R. Doc. 79) and Motion for Rule 56(d) Relief (R. Doc. 80), which largely sought reconsideration of the Court's denial of certain aspects of Plaintiffs' previous Rule 56(d) motion and motion to compel. The Court denied these renewed motions on August 26, 2026. (R. Doc. 105). Given the delays caused by Plaintiffs' renewed motions for relief already denied, the Court has continued trial until resolution of the pending Motions for Summary Judgment. (R. Doc. 108).

## II. Law and Analysis

### A. Legal Standards for Summary Judgment

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff, if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

A moving party must support an assertion that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Local Rule 56 details the requirements for statements of material facts. "A motion for summary judgment shall be supported by a separate, short, concise statement of material facts, each set forth in separately numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." LR 56(b)(1). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly converted." LR 56(f).

**B. The Undisputed Material Facts**

Zodiak and Optimum submitted Statements of Material Facts in support of their respective motions. (*See* R. Docs. 68-1, 69-1). Plaintiffs filed their own corresponding Opposing

Statements of Material Facts. (*See* R. Docs. 82, 82-1). Zodiak and Optimum submitted Reply Statements of Material Facts. (*See* R. Docs. 93-1, 98-1). The following facts, which are derived from the foregoing Statements of Material Facts are undisputed unless otherwise noted.[3]

Plaintiffs reside in Plaquemine, Louisiana. The short-term lease property at issue, which was leased through Airbnb, is located on Plaintiffs' property is adjacent to the Willis Only property. U.S. Carriers, Rodney Willis, Willis Only, and Bayou Rental are not parties to this action.

Mrs. Miller testified that Plaintiffs have had ongoing disputes with Rodney Willis since he purchased the adjacent commercial property on which the RVs were located.[4] (R. Doc. 82-3 at 4-5). Mr. Miller testified that Mr. Willis used his property for a variety of commercial activity, including junk storage, dirt storage, construction equipment storage, concrete washout treatment, and storage of vehicles carrying fishing bait. (R. Doc. 68-5 at 9-10; R. Doc. 69-9 at 17-18). Mr. Miller further testified that Plaintiffs reported increased pest and vermin activity from these commercial activities after Mr. Willis took possession of the lot in 2019. (R. Doc. 69-9 at 9). Mr. Miller specifically testified that he had been "trapping and killing rats and mice in 2021, 2022, 2023, and 2024." (R. Doc. 69=9 at 12). Mrs. Miller submitted a declaration to "further clarify and supplement" her deposition testimony to submit a video of an Orkin representative with fleas

[3] Some of Plaintiffs denials and qualifications of asserted material facts are plainly evasive. For example, Optimum asserts in Paragraph 20 of its Statement of Material Facts that "Zodiak only stored the RVs on Rodney Willis's property form February 2024 to April 2024." (R. Doc. 69-1 at 4). Zodiak cited specific deposition testimony to support this material fact. (*See* R. Doc. 69-9 at 13 (S. Miller testimony that the RVs arrived on or about February 28, 2024); R. Doc. 69-8 at 17 (L. Miller testimony that the RVs were removed on or about April 19, 204). In denying this asserted material fact (which is directly supported by deposition testimony), Plaintiffs fail to give any other time frame for the location of the RVs on the adjacent property supported by any record evidence. Instead, Plaintiffs discuss other non-response assertions involving the time of day on which the alleged trespasses occurred. (*See* R. Doc. 82-1 at 5). The Court has deemed admitted this and other material facts that were not properly controverted by citations to specific record evidence controverting the asserted material fact. *See* LR 56(c), (f).

[4] Plaintiffs assert that these disputes are independent of this action. (*See* R. Doc. 82-1 at 5).

during a May 23, 2024 inspection and photographs of vermin traps placed by her husband on September 6, 2025, December 7, 2025, and December 10, 2025. (R. Doc. 82-12 at 1-2).

Optimum purchased the RVs at issue at an auction in Baker, Louisiana. Optimum had the RVs inspected prior to purchase, although there is a dispute regarding the results of those inspections. (R. Doc. 69-1 at 2; R. Doc. 82 at 2). In particular, there is a dispute regarding whether the RVs were professionally cleaned and sanitized before being auctioned, and whether the RVs were free from fleas and vermin at the time they were transported.

There is no dispute, however, that after Optimum purchased the RVs at auction, it retained U.S. Carriers to facilitate the transportation of the RVs to various locations throughout the United States, and U.S. Carriers in turn subcontracted with Zodiak, a brokerage firm that manages the relationship between independent contract carriers and vehicle shippers, for the transport of a certain number of the RVs to various Optimum RV dealerships.[5] (R. Doc. 69-1 at 2; R. Doc. 68 at 2). Mr. Plautz testified that U.S. Carriers contacted Zodiak to establish a "logistics plan" for the transportation of the RVs. (R. Doc. 82 at 2; R. Doc. 82-1) (citing R. Doc. 82-5 at 3). There are no written contracts or agreements between Optimum, Zodiak, or U.S Carriers. (R. Doc. 82 at 8).

The RVs were located on the Willis Only property for less than two months from February 2024 to April 2024. Zodiak first transported and stored some of the RVs in a field at Crown Storage in Port Allen, Louisiana. After substantial rain inundated the access roads to the field, Zodiak contracted with Willis Only for the storage of the RVs, which were relocated beginning in February 2024. Zodiak moved 80 RVs moved to the Willis Only property by early March 2024, the number of RVs dwindled to 31 RVs by April 5, 2024, and all of the RVs were

---

[5] At the beginning of this lawsuit, Optimum disputed its ownership of any of the RVs. Optimum then conceded that it may have owned at least some of the RVs at issue. (*See* R. Doc. 39).

removed by April 19, 2024. (R. Doc. 68-1 at 3; R. Doc. 82 at 4). Zodiak paid Willis Only $500 per month to store the RVs. (R. Doc. 82 at 10). Mr. Willis declares that he inspected the RVs and confirmed they were in good condition when they were placed on the Willis Only property. (R. Doc. 98-10).

At her deposition, Mrs. Miller testified that she first observed flea activity at her property on April 13, 2024. There is no record of guest complaints at the short-term least rental property, however, made in March through early April 2024. Plaintiffs testified that they did not inspect or look inside the RVs (which were located on the Willis Only property), and never observed any rat, roach, or flea exit (or in and around) any of the RVs. (R. Doc. 69-9 at 13-14; R. Doc. 69-8 at 16). Plaintiffs also testified that they never saw a rat or mouse inside the short-term rental property, and that there was no roach infestation within the short-term rental. (R. Doc. 69-9 at 19; R. Doc. 69-8 at 12).

There is no dispute that any ruts caused by the RVs have resolved themselves naturally over time without the expenditure of any money by Plaintiffs. (R. Doc. 68-2 at 5).

On April 25, 2024, Orkin inspected Plaintiffs' property and found no live rats or roaches, although it documented the presence of fleas. (R. Doc. 88-1 at 4; R. Doc. 82 at 4-5).

Mrs. Miller testified that Plaintiffs had ongoing disputes with Willis Only and its owner Rodney Willis. (R. Doc. 68-3 at 8-15). In July 2024, Plaintiffs sued Willis Only and Mr. Willis in a separate lawsuit in State Court. (*See* R. Doc. 68-4). In support of that lawsuit, Plaintiffs attested that Willis Only and Mr. Willis "store junk" and "store bait trucks" on the Willis Only property, and that the result has been infestations of fleas, roaches and vermin. (*See* R. Doc. 68-4 at 2-3). Mr. Willis also testified in the State Court proceeding that the RVs placed on the Willis Only property had flea foggers inside of them. (R. Doc. 82-17 at 7).

The parties dispute whether Bayou Rental or Plaintiffs received income from the short-term rental business at issue.

### C. Legal Standards for Plaintiffs' Claims

#### 1. Plaintiffs' Nuisance and Custodial Liability

Plaintiffs seek to recover on their nuisance claim pursuant to Louisiana Civil Code Articles 667, 668, 669. These statutes read as follows:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

La. Civ. Code art. 667.

> Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
>
> Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage.

La. Civ. Code art. 668.

> If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.

La. Civ. Code art. 669.

"The Louisiana Supreme Court has consistently treated these three code articles (which together govern Louisiana's nuisance law) as a cohesive unit, uniformly interpreting them *in pari materia*." *Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200 (5th Cir. 2000) (citing cases). "With the exception of the 'ultrahazardous' activities of pile driving and blasting with explosives—neither of which is at issue here—a claim under any or all of these three Code articles requires a showing of negligence." *Ellis v. Evonik Corp.*, 604 F. Supp. 3d 356, 374 (E.D. La. 2022) (citing *Brown*, 213 F.3d at 200) ("[T]he 1996 amendment to Article 667 applies to Articles 668 and 669 as well, so that stating a claim under one or more of these articles now requires a showing of negligence.")). "Accordingly, to assert a nuisance claim under any or all of these articles, plaintiffs must show that a defendant is (1) a proprietor who (2) negligently (3) conducts 'work' on his property (4) that causes damage to his neighbor." *Ellis*, 604 F. Supp. 3d at 374 (internal quotation omitted).

In a nuisance action, "the proprietor is . . . responsible not only for his own activity, but also for that carried on by his agents, contractors and representatives with his consent and permission. This liability which the law imposes attaches also to the agent or contractor, who . . . becomes solidarily liable with the proprietor if his activity causes damage to a neighbor." *Lombard v. Sewerage & Water Bd. of New Orleans*, 284 So. 2d 905, 912 (La. 1973); *see also Yokum v. 615 Bourbon St., L.L.C.*, 977 So. 2d 859 (La. 2008) ("The term 'proprietor' as used in Article 667, while commonly interpreted to refer to landowners, "has been expansively interpreted by the courts to apply not only to a landowner, but also to a person whose rights derive from the owner."); *Inabnet v. Exxon Corp.*, 642 So. 2d 1243, 1251 (La. 1994) ("[D]elictual actions under Article 2315, based on conduct which violates the obligations of

Articles 667-669 not to use one's property so as to cause damage to neighbors or to deprive neighbors of the enjoyment of their property, may be brought by persons holding rights derived from the landowner or against such persons."); *see also Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 731 (5th Cir. 2017) (To bring a nuisance claim,"[a] plaintiff must have some interest in an immovable near the defendant-proprietor's immovable.") (quotation omitted); *see Badke v. USA Speedway, LLC*, 139 So. 3d 1117, 1126 (La. 2d Cir. 2014) (the Code articles collectively "embody a balancing of rights and obligations associated with the ownership of immovables.").

Generally relied upon as the basis for a premises liability claim regarding immovable property, Louisiana Civil Code article 2317.1 provides the basis for Plaintiffs' custodial liability claims:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2317.1. To establish liability for damages caused by a defective thing, "a plaintiff must prove [1] that the thing was in the defendant's custody [or *garde*], [2] that the thing contained a defect which presented an unreasonable risk of harm to others, [3] that this defective condition caused damage and [4] that the defendant knew or should have known of the defect." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 616 (5th Cir. 2018) (citation omitted); *Jordan v. Hickman*, 899 So. 2d 830, 833 (La. 2d Cir. 2005); *see Lawrence v. Rocktenn CP, LLC*, No. 16-0821, 2017 WL 2261741, at *2 (W.D. La. May 22, 2017) ("In Louisiana, the owner or custodian of immovable property has a duty to keep his property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the

condition or warn potential victims of its existence. The basis for such delictual liability is established in Louisiana Civil Code articles 2315, 2317 and 2317.1.") (citations omitted).

Regardless of the underlying statute providing the general duty at issue, the Court will analyze Plaintiffs' nuisance and custodial liability claims pursuant to the Louisiana negligence standard, which applies a duty/risk analysis to determine liability. "Under the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element)." *Id.* "If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable." *Id.*

**2. Trespass**

Under Louisiana law, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code Art. 2315(a). "The tort of trespass occurs when there is an unlawful physical invasion of property or possession of another" without the consent of the property owner. *Hatch v. Watkins*, 411 So.3d 710, 716 (La. 3rd Cir. 2024); *see Terre Aux Boeufs Land Co., Inc. v. J.R. Gray Barge Co.*, 803 So.2d 86, 94 (La. 4th Cir. 2001); *Britt Builders, Inc. v. Brister*, 618 So.2d 889, 903 (La. 1st Cir. 1993). Trespass is considered to be "an intentional tort, requiring proof that the defendant took some intentional action that resulted in harm to the plaintiff." *Terre Aux Boeufs Land*, 803 So.2d at 95. "Even though the work may have been done by another, the party supervising and/or directing the work and ordering the trespass is liable." *See Hatch v. Watkins*, 411 So.3d 710, 717 (La. 3rd Cir. 2024)

(citing *Gaspard v. St. Martin Parish Sewerage Dist. # 1*, 569 So.2d 1083 (La. 3rd Cir. 1990)). "Damages are recoverable for 'unconsented to activities performed on the property of another, based on physical property damage, invasion of privacy, inconvenience, and mental and physical suffering.'" *Hatch*, 411 So. 3d at 717 (quoting *Beacham v. Hardy Outdoor Advertising, Inc.*, 520 So.2d 1086, 1091 (La. 2d Cir. 1987)).

**D. Plaintiffs' Nuisance and Custodial Liability Claims**

**1. Proprietorship and Custody/Garde**

**a. Zodiak (not Optimum) Was a Proprietor**

In the Second Amended Complaint, Plaintiffs alleged that Zodiak derived a property right in the immovable property at issue through a lease agreement with the landowner, Willis Only:

> Pursuant to the authority to act on its behalf by defendant Optimum, defendant Zodiak entered into an oral lease agreement with Rodney Willis Only, LLC permitting the subject RV's to be stored and kept on the property owned by Rodney Willis Only, LLC. The subject RV's were stored and kept on Rodney Willis Only, LLC's property with defendant Optimum's consent and knowledge. Defendant Zodiak's was permitted and given the right to store and keep the subject RV's on the property owned by Rodney Willis Only, LLC, through its relationship with defendant Optimum.

(Sec. Am. Compl. ¶ 4(b)). For the purposes of determining whether Zodiak was a proprietor for the purposes of Plaintiffs' nuisance claims, it is sufficient that there is no genuine dispute that Zodiak specifically contracted with Willis Only for the purposes of storing the RVs on the Willis Only property. Furthermore, Zodiak does not argue that it was not a proprietor for the purposes of Planitiffs' nuisance claim.

The Court will, however, grant Optimum summary judgment on the nuisance claims because there is no disputed material fact regarding Optimum's lack of status of a proprietor. Optimum has set forth evidence (testimony by Dr. Tovsen and Mr. Plautz, and the Declaration of Mr. Wills) hat neither Optimum nor the non-party U.S. Carriers contracted with Willis Only for

the storage of the RVs at issue. (*See* R. Doc. 69-6 at 7; R. Doc. 69-4 at 4; R. Doc. 69-5 at 12). Plaintiffs have not set forth any evidence of a contract between Optimum and Willis Only or Mr. Willis. Accordingly, there is no genuine dispute that Optimum lacked any privity of contract with Willis Only or Mr. Willis for the storage of the RVs on the adjacent property. Plaintiffs have not set forth any competent evidence in support of a finding that Optimum derived a specific property right in the Willis Only property through contract or otherwise.

Furthermore, while Optimum may own the RVs at issue, there is insufficient evidence in support of a finding that Optimum may be held vicariously liable for Zodiak's decision to temporarily store the RVs at the Willis Only property. In other words, there is no genuine dispute that Optimum did not have operational control over Zodiak's transport of the RVs, including the temporary storage of the RVs on the Willis Only property, for the purposes of establishing vicarious liability for the nuisance claims (or any other claim as discussed below).

"It is well-established that a principal is not liable for the negligent acts of an independent contractor in the course of performing contractual obligations." *Thomas v. Burlington Res. Oil & Gas Co.*, No. 99-3904, 2000 WL 1528082, at *1 (E.D. La. Oct. 13, 2000) (citing *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549 (5th Cir. 1987)). "This general rule, often known as the independent-contractor defense, is subject to 'two exceptions:' (1) when the independent contractor is engaged in an ultrahazardous activity; or (2) when the principal 'retains or exercises operational control' or expressly or impliedly authorizes an unsafe practice." *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 3092859, at *6 (E.D. La. Aug. 3, 2022). "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way. *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 3092859, at *6 (E.D. La. Aug.

3, 2022) (citing *Fruge ex rel. v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)); *see also Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904, 907-08 (5th Cir. 1985) (finding there was no operational control because the principal checked on operations but never supplied detailed instructions). "The physical presence of a representative of a principal is not sufficient to show supervision or control." *Fruge*, 337 F.3d at 564. "The "standard is not met merely because the principal contractually retained general rights—for example, the right to 'order the work stopped or resumed,' 'inspect its progress,' 'receive reports,' or demand that an independent contractor develop and implement safety procedures." *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 730 (5th Cir. 2021) (citation omitted).

Contrary to Plaintiffs' assertions, there is no competent summary judgment evidence in support of a finding that Optimum retained any operational control over how or where Zodiak transported and stored the RVs. Both Optimum and Zodiak have submitted evidence (deposition testimony by Mr. Wengler, Mr. Plautz, and Dr. Tovsen) in support of their assertions that Zodiak contracted with the non-party U.S. Carriers (and not Optimum) with respect to the transport of the RVs at issue. (*See* R. Doc. 69-1 at 2; R. Doc 68-1 at 2). Plaintiffs rely primarily on the deposition testimony of Mr. Plautz (or the testimony of Mrs. Miller) in support of a finding that Optimum maintained operational control over Zodiak during the transport of the RVs and storage on the Willis Only property. (*See* R. Doc. 82 at 9-11, ¶¶ 29-37). The Court has reviewed this testimony (and other documents relied upon by Plaintiffs, including Zodiak invoices and the Willis declaration), and finds that Plaintiffs have mischaracterized this evidence as supporting a finding that Optimum maintained operational control through "direct supervision over the step-by-step process of accomplishing" the transportation of the RVs. *See Fruge*, 337 F.3d at 564. No reasonable juror could conclude that Optimum – which did not contract with Zodiak –

maintained operational control over the transportation and storage of the RVs at issue where (1) the non-party U.S. Carriers (and not Optimum) contracted with Zodiak for the transportation and storage of the RVs, (2) Dan Plautz, CFO and Director of Operations at Zodiak, specifically testified that Zodiak coordinated the storage of the RVs at Crown Storage and the subsequent relocation and storage by Willis Only (*see* R. Doc. 82-5), and (3) Zodiak specifically paid all invoices to Willis Only, seeking reimbursement from U.S. Carriers (not Optimum). (*See* R. Doc. 82-9).

In short, Plaintiffs have not set forth any evidence that U.S. Carriers, much less Optimum, maintained operational control over Zodiak for the purposes of establishing vicarious liability on Plaintiffs' nuisance claims.

**b. Zodiak (and not Optimum) had Custody/Garde**

Similarly, for the purposes of the custodial liability claims, the Court concludes that Optimum did not have custody (or garde) over the RVs at the time they were placed on the adjacent Willis Only premises.

"Louisiana courts have generally held that (1) ownership of a thing establishes a rebuttable presumption of custody or 'garde,' and (2) in a case of non-ownership, a defendant may be found to have custody over property when he exercises direction and control of the thing and derives some benefit from it." *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 441-42 (5th Cir. 2021). Custody or garde of a thing is a question of fact. *Dupree v. City of New Orleans*, 765 So. 2d 1002, 1009 (La. 2000). "[I]in determining whether a thing is in one's custody or garde, courts should consider (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing." *Id. See Davis v. Riverside Court Condo. Ass'n Phase II, Inc.*, 154

So. 3d 643, 648 (La. 4th Cir. 2014) (Liability under Louisiana Civil Code article 2317.1 "arises out of the party's legal relationship to the thing posing an unreasonable risk of harm; and liability is imposed *based on custody or garde, not solely ownership*."); *Bourg v. BT Operating Co.*, No. 08-0596, 2009 WL 960011, at *6 (S.D. Tex. Apr. 8, 2009) ("Although the plain language of article 2317.1 seems to impose a duty on either an owner or custodian, Louisiana courts have continued to hold that the statutory duty is only triggered upon a showing of custody, not mere ownership.") (collecting cases)). Importantly, "a contractual undertaking by another to maintain and control the property" negates an owner's custody or *garde. See Davis*, 154 So. 3d at 648 (quoting *Gallina v. Hero Lands Co*., 859 So. 2d 758, 762 (La. 4th Cir. 2003)); *see also Busby v. Texas Roadhouse Holdings, L.L.C.*, No. 16-01467, 2019 WL 7167189, at *4 (W.D. La. Dec. 20, 2019); *Hernandez v. Dedicated TCS, L.L.C.*, No. 16-3621, 2017 WL 2868803, at *6 (E.D. La. July 5, 2017); *Salazar v. Wood Group Prod. Servs., Inc.*, No. 15-00939, 2017 WL 1129870, at *3 (W.D. La. Mar. 24, 2017).

Here, the RVs at issue are corporeal movables (owned by Optimum) that were placed on immovable property adjacent to the Plaintiffs' property (owned by Willis Only) pursuant to a contract to park the RVs entered between Willis Only and Zodiak. Assuming that these RVs (which were not attached to the land) qualify as "things" for the purposes of Article 2317.1,[6] the Court concludes that there is no genuine dispute that Zodiak – and not Optimum – had custody

[6] The parties do not discuss whether a detached corporeal movable can qualify as a "thing" for the purposes of this statute. Again, Article 2317.1 is generally cited for premises liability claims regarding unreasonably dangerous conditions on immovable property, or an attachment or component part on the immovable property. *See Lawrence v. Rocktenn CP, LLC*, No. 16-0821, 2017 WL 2261741, at *2 (W.D. La. May 22, 2017) ("In Louisiana, the owner or custodian of immovable property has a duty to keep his property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. The basis for such delictual liability is established in Louisiana Civil Code articles 2315, 2317 and 2317.1.") (citations omitted); *see Stewart v. Fam. Dollar, Inc.*, No. 23-314, 2025 WL 2680770, at *3 (M.D. La. Sept. 18, 2025) (analyzing liability regarding bollards and bolts). That said, the Louisiana Supreme Court has stated in a footnote that an animal is a "thing" for the purposes of Louisiana Civil Code article 2317. *Rozell v. Louisiana Animal Breeders Co-op., Inc.*, 434 So. 2d 404, 408 n.8 (La.), *opinion corrected*, 451 So. 2d 1070 (La. 1983). Accordingly, the Court will assume the RVs are "things" for the purposes of this analysis.

or *garde* over the RVs at the time they were placed on the adjoining Willis Only property. For the same reasons that Optimum has established that it did not maintain operational control over Zodiak with respect to the transport and storage of the RVs, Optimum has rebutted the presumption that it maintained custody or garde over the RVs while they were transported by Zodiak.

In reaching this conclusion, the Court finds decisions regarding service contractors to be analogous to the instant situation. To be clear, "a service contract by itself does not create garde." *Spott v. Otis Elevator Co.*, 601 So. 2d 1355, 1363 (La. 1992) (finding that elevator maintenance firm did not have "garde" over elevator where owner was the primary party benefiting from elevators on its premises and where maintained firm employee only visited the location "weekly for a brief period of time" and the service contract specifically provided that the owner retained control of the elevator). "The one exception is where the service contractor has 'exclusive care and custody' of the thing in question, such as where it has been hired to be on the premises full time to care for the thing." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig*., 838 F. Supp. 2d 497, 512 (E.D. La. 2012) (citing *Coleman v. Otis Elevator Co.,* 582 So.2d 341, 343 (La. 4th Cir. 1991) (Otis was liable where it had exclusive custody and control of elevators by placing an employee full time on premises of Charity Hospital to service its forty-eight elevators)).

Here, there is no genuine dispute that Zodiak had "exclusive care and custody" of the RVs when it placed them on the Willis Only property for storage. The summary judgment evidence shows that Optimum contracted with U.S. Carriers, which in turn contracted with Zodiak for the transport of the RVs at issue. Plaintiffs have not set forth any evidence demonstrating that Optimum directed or controlled the manner or methods by which Zodiak

transported and stored the RVs, much less Zodiak's decision to store the RVs on the Willis Only property.[7]

For the foregoing reasons, the Court concludes that Optimum cannot be held liable for any property claim pursuant to Louisiana Civil Code article 2317.1 as a matter of law.

### 2. Plaintiffs Cannot Establish Causation for Nuisance or Custodial Liability Based on an Infestation

As discussed above, the record establishes that Zodiak (and not Optimum) was a proprietor for the purposes of Plaintiffs' nuisance claims pursuant to Louisiana Civil Code Articles 667, 668, 669, and that Zodiak (and not Optimum) had custody or garde over the RVs at the time they were stored at the Willis Only property for the purposes of their property claims pursuant to Louisiana Civil Code Article 2317.1. Nevertheless, the Court grants summary judgment to both Optimum and Zodiak on these overlapping claims (to the extent related to an alleged infestation of vermin, roaches, and fleas) because Plaintiffs cannot establish causation.

Mr. Miller's testimony shows that Plaintiffs encountered pest and rodent problems years before the RVs were placed on the Willis Only property, and that the source of those pest and rodent problems, may, in part, concern the demolition of a building on the Willis Only property. (R. Doc. 68-5 at 8-9, 14). Plaintiffs testified that they first observed flea activity on April 13, 2024, about six weeks after the first RVs arrived and after a majority of the RVs had been removed. (R. Doc 68-3 at 18). Plaintiffs further testified that guests at the short-term rentals did not complain about fleas before this date. (R. Doc. 68-3 at 28-29; R. Doc. 68-5 at 18-19). Mrs. Miller testified that Orkin inspected the property on April 25, 2025, and found no live rats or

[7] Mr. Wengler did testify that he had 2-3 conversations with Mr. Buscemi regarding moving the RVs off the Willis Only property to "[g]et them to the stores." (R. Doc. 82-6 at 110-111). This deposition testimony merely shows that Optimum was directing Zodiak to finish transporting the RVs to their final locations. It does not demonstrate any direction or control regarding the storage of the RVs on the Willis Only property.

roaches (but did find fleas). (R. Doc. 68-3 at 19). Finally, Plaintiffs testified that they did not inspect the RVs or notice any rodents, roaches, or fleas exit the RVs. (R. Doc. 68-3 at 22, 27; R. Doc. 68-5 at 16-17).

Plaintiffs have set forth evidence that "[a]t or near the time of the transport, at least sixty-two (62) RVs were documented by Optimum . . . as having animal feces, nests, animal hair, insects, wet floor, urine, blood stains, urine smell, mold, and/or physical damage." (R. Doc. 87 at 7) (citing R. Doc. 82-12).[8] Plaintiffs also submit evidence that Mr. Willis testified that in the State Court action that he saw insect foggers inside the RVs. (R. Doc. 82-17).

Plaintiffs have failed, however, to set forth any direct evidence that the placement of the RVs was the cause-in-fact of the alleged infestation of vermin, fleas, and roaches. While Plaintiffs hired Orkin, a professional pest control company, they failed to offer any opinions by Orkin or any other expert evidence in support of a finding that there was, in fact, a flea, rodent, or roach infestation on their property that it was caused by the RVs at the Willis Only property. The Orkin representative did not note any rodents or roaches in his inspection. Moreover, Louisiana cases involving infestations have involved expert testimony. *See*, *e.g.*, *Brouillete v. Ducote*, 634 So.2d 1243 (La. App. 4th Cir. 1994) (termite infestation); *Bortnick v. French Market Homestead*, 416 So.2d 603 (La App. 5th Cir 1982); *Maguire v. Masino*, 325 So.2d 844, 847 (La. App. 4th Cir. 1975) (same). The Court finds these decisions instructive.

The record is replete with roach and rat activity for years prior to the placement of the RVs. While Plaintiffs disclaim having any fleas prior to the placement of the RVs, they have not submitted any expert opinion testimony in support of a finding that fleas would have waited over

---

[8] Plaintiffs have not attempted to set forth any evidence in support of a finding that the noted "animal feces, nests, animal hair, [and] insects" were associated with the alleged infestations of fleas, roaches, or rodents. Furthermore, Plaintiffs have not established the relevance of the "wet floor, urine, blood stains, urine smell, mold, and/or physical damage" noted regarding the RVs.

a month after the arrival of the RVs to migrate from the Willis Only property to their short-term rental property such that Zodiak would be liable. *See* Fed. R. Evid. 701 (lay witness testimony must be "rationally based on the witness's perception" and not based on "scientific, technical or other specialized knowledge."). Plaintiffs have admitted that they did not observe any fleas, rodents, or roaches on the RVs or otherwise migrating from the RVs to their property. Absent any direct evidence that the fleas on their property migrated from the RVs, Plaintiffs must rely solely on circumstantial evidence to establish a genuine dispute.

The Court finds no basis for applying the doctrine of *res ipsa loquitur* to the facts of this case as argued by Plaintiffs. "The principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses." *Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200 (5th Cir. 2000) (quoting *Cangelosi v. Our Lady of the Lake Regional Medical Center,* 564 So.2d 654, 660 (La. 1990)). "The defendant's negligence under *res ipsa* 'may be proved by circumstantial evidence alone when that evidence establishes, more probably than not, that the injury was of a kind which ordinarily does not occur in the absence of negligence, that the conduct of the plaintiff or of a third person was sufficiently eliminated by the evidence as a more probable cause of the injury, and that the indicated negligence was within the scope of the defendant's duty to the plaintiff." *Id*. "*Res ipsa* is employed (typically in the medical malpractice context) when the cause of the harm is obvious, such as 'fracturing a leg during an examination; amputating the wrong arm; carelessly dropping a knife, scalpel, or acid on a patient; or leaving a sponge in a patient's body.'" *Brown v. Olin Chem. Corp.*, 231 F.3d 197, 201 (5th Cir. 2000) (quoting *Hastings v. Baton Rouge Gen. Hosp.*, 498 So. 2d 713, 719 (La. 1986)).

Here, the Court finds that the alleged injury – infestation of fleas, roaches, and vermin – is not the kind of injury that "ordinarily does not occur absent negligence." *Bonoano v. Docar Sales, Inc.*, 405 So.3d 886, 896 n. 10 (La. 1st Cir. 2024). These are natural and ordinary occurrences that may be brought about by any number of sources, including those of the actual landowner. An equally probable explanation for the alleged infestations is that the property "is in the country" as admitted by Plaintiffs, and was not unlike Plaintiffs' past and ongoing encounters with roaches and vermin. (*See* R. Doc. 87 at 20). The Court finds no basis for applying the doctrine of *res ipsa loquitor* for the purposes of concluding that the presence of RVs on an adjacent lot caused the alleged infestation on Plaintiffs' own property.

In sum, Plaintiffs have not submitted evidence establishing a genuine issue of material fact with respect to whether the placement of the RVs was the cause-in-fact of Plaintiffs' alleged infestation and resulting damages. Accordingly, Zodiak (and Optimum) are entitled to summary judgment based on Plaintiffs' inability to establish causation.

For all of the foregoing reasons, including Plaintiffs' inability to establish causation in support of the nuisance and custodial liability claims, the Court need not reach the issues of (1) whether and to what extent Optimum had "knowledge" of the alleged defects in the RVs and (2) whether Plaintiffs incurred any damages with respect to the nuisance and custodial liability claims.[9]

[9] Because Plaintiffs' claims for damages permeate all of their theories of liability, the Court will discuss them below with respect to Plaintiffs' trespass claims.

### E. Plaintiffs' Trespass Claims

Plaintiffs' trespass claims are based on allegations that (1) the hot-shot drivers temporarily parked and drove on their property when relocating the RVs to the Willis Only property for storage, (2) unidentified members of the community inquired about the RVs and whether they were on sale, and (3) the hot-shot drivers (or unidentified members of the community) left feces, urine, or trash on the Plaintiffs' property.[10]

In particular, Plaintiffs allege that "Zodiak trespassed onto [Plaintiffs'] property causing damages including ruts." (Sec. Am. Compl. ¶ 4). Plaintiffs further allege that "the RV's created an 'attractive nuisance' meaning that numerous individuals constantly entered [Plaintiffs'] properties inquiring whether or not the RVs were for sale and drawing potential thieves who looted and vandalized the RVs and also entering [Plaintiffs'] properties causing further trespass." (Sec. Am. Compl. ¶ 6; *see* Sec. Am. Compl. ¶ 5.) Plaintiffs further allege that when the RVs were finally removed on or about April 19, 2024, "defendants caused further damage to [Plaintiffs'] properties, including trespass onto [Plaintiffs'] properties and again leaving ruts and physical damage to the properties." (Sec. Am. Compl. ¶ 7). Finally, Plaintiffs allege that they have shown that "defendant Zodiak repeatedly trespassed on [Plaintiffs'] properties, including leaving feces, urine, trash, ruts, and debris and, further, that defendant Zodiak was the agent of and employed by defendant Optimum to move and control the subject RVs and, as a result, the defendants are liable to [Plaintiffs] for trespass and in tort pursuant to La. Civ. C. Art. 2315." (Sec. Am. Compl. ¶ 9).

---

[10] Plaintiffs allege that Zodiak (not any specific hot-shot drivers) left feces, urine, trash, ruts, and debris on Plaintiffs' property. (Sec. Am. Compl. ¶¶ 4, 5a-d, 6, 9). To a certain extent, these claims are theoretically actional as nuisance claims pursuant to Article 667-669. *See Robichaux v. Huppenbauer*, 245 So. 2d 385, 388 (La. 1971) (enforcing injunctive relief on livery stable to include spraying premises with disinfectant, dispensing poison and covering food bins to reduce rodents, and removing manure daily). That said, the Court finds that Plaintiffs have alleged these claims as part of their "trespass" theory of recovery and the Court will analyze these claims as such.

As an initial matter, Plaintiffs' trespass claim fail to the extent Plaintiffs are alleging that unidentified "individuals within the community" trespassed on their property. Neither Zodiak nor Optimum are liable for trespass by third parties over which they had no control.[11]

Plaintiffs have also failed to set forth any allegations (or evidence) in support of a finding of a continuing trespass. "A continuous trespass is a continuous tort; one where multiple acts of trespass have occurred and continue to occur; where the tortious conduct is ongoing, this gives rise to successive damages." *Hogg v. Chevron USA, Inc.*, 45 So. 3d 991, 1003 (La. 2010); *see Hatch v. Watkins*, (La. 3rd Cir. 2024), 411 So. 3d 710, 718 (continued use of a parking lot and/or billboard structure encroaching on the plaintiff's property could constitute a continuing trespass); *Perrilloux v. Stilwell*, 814 So.2d 60 (La. 1st Cir. 2002) (continuing trespass found where neighbor continued to use driveway that encroached on landowner's property). "To determine whether a trespass is continuous, a court must engage in the same inquiry used to determine the existence of a continuing tort; i.e., the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." *Hogg*, 45 So. 3d at 1003.

There is no allegation in the Second Amended Complaint that the RVs were parked on Plaintiffs' property for any extended period of time during the less than two months at issue in

[11] Plaintiffs allege that the RVs constituted an "attractive nuisance" in the sense that they attracted third-party individuals inquiring about their sale and potential thieves who "looted and vandalized" the RVs. (Sec. Am. Compl. ¶¶ 5d, 6). The attractive nuisance doctrine fails as a matter of law because the alleged "attractive nuisance" did not result in injury to a young child. *See Saxton v. Plum Orchards*, 40 So. 2d 791, 796 (La. 1949); *see also Southern v. Rosales*, 401 So. 3d 866, 875 (La. 2d Cir. 2024) ("For there to be a case under the attractive nuisance doctrine there must appear: 1. That the injured child was too young to understand and avoid the danger. 2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be. 3. That there was a strong likelihood of accident. 4. That the danger was one other than those ordinarily encountered. 5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances.") (citing *Beasley v. Guerriero*, 123 So. 2d 774, 777 (La. 2d Cir. 1960)). Furthermore, Plaintiffs have not explained how inquiries about the sale of the RVs or damage or theft regarding the RVs resulted in any potential damages to them.

this action. Plaintiffs allege that the RVs "were left on the property behind and adjacent to [Plaintiffs'] properties" and that the ruts were caused as "[i]n the process of transportation and deposit of the RVs" by Zodiak onto those locations. (Sec. Am. Compl. ¶ 4). At most, Plaintiffs have alleged separate and distinct instances of alleged trespass by Zodiak based upon separate acts or omissions by the hot-shot drivers in temporarily moving or parking the RVs on Plaintiffs' property (resulting in ruts), as well as leaving feces, urine, trash, ruts, and debris on Plaintiffs' property. (R. Doc. 82-18 at 1) ("Drivers for Zodiak sat on my porch, without permission, urinated, and left feces, trash, and debris in my yard. The RV's were parked on my property without consent or permission."); (R. Doc. 82-18 at 2) ("I then explained to him what he said he had already been told by Chris (Trepani) of his men on my properties, of all the late nights trespassing, hanging out on my AIRBNB porch, knocking on my door many times, going to the bathroom (both feces and urine) on my properties, the Zodiak trucks cutting ruts in my yard, backing onto my properties . . .").

The Court concludes that, for the same reasons discussed above, there is no genuine dispute that Optimum did not have operational control over Zodiak (or the specific hot-shot drivers) with respect to the placement of the RVs on the adjoining Willis Only property, and, therefore, cannot be held vicariously liable for any trespass claims. As discussed above, Plaintiffs have not demonstrated that there is a contractual relationship between Optimum and Zodiak, much less between Optimum and the hot-shot drivers. Plaintiffs did not allege any specific acts by Optimum or its employees that would constitute a trespass under Louisiana law. Accordingly, the Court will grant Optimum summary judgment on Plaintiffs' trespass claims.

Plaintiffs' trespass claims against Zodiak, however, will survive summary judgment. Mr. Plautz testified that Zodiak has no physical assets and only manages the relationship between independent contract carriers and shippers:

> A customer has something that needs to be shipped. They notify us of the requirements for the shipping process. We engage independent contractors that have the proper equipment and proper insurance and the proper licensing to provide the service. We manage the transaction from pickup to delivery via a shared app.

(R. Doc. 68-6 at 4). Mr. Plautz further testified that Zodiak does not direct the actions of the drivers, personally interact with the drivers, or have any ability to identify the specific drivers. (R. Doc. 68-6 at 16-17).

Zodiak has not, however, presented any specific evidence regarding the contractual relationship between itself and the hot-shot drivers (or any intermediary that sub-contracted with the specific hot-shot drivers), other than Mr. Plautz's testimony that the app at issue – Super Dispatch – includes a service agreement function. (*See* R. Doc. 68-6 at 17). There is a genuine dispute regarding whether the hot-shot drivers were Zodiak's employees or independent contractors. *See Hickman v. Southern Pacific Transport Company*, 262 So.2d 385, 390-391 (La. 1972) (The [independent-contractor] relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its

breach.”). Zodiak had custody and garde over the RVs, specifically contracted for the RVs to be stored on the Willis Only property, and hired the hot-shot drivers at issue.

While Zodiak cannot be held liable for the acts of general members of the community attracted by the RVs, there remains a genuine dispute regarding whether the hot-shot drivers drove the RVs over Plaintiffs’ property and left feces, urine, trash, ruts, and debris on Plaintiffs’ property. Even if the hot-shot drivers were independent contractors (and not employees), there is a genuine dispute regarding whether the independent-contractor defense applies: while the hot-shot workers were not engaged in ultrahazardous activity and there is no evidence that Zodiak expressly or impliedly authorize any trespass on Plaintiffs’ property, there remains questions of fact regarding whether Zodiak retained or exercised operational control over the hot-shot drivers with respect to the movement and storage of the RVs on the Willis Only property.

**F. Damages**

As discussed above, the only remaining claims are those against Zodiak for trespass. There remain genuine disputes of material facts regarding Plaintiffs’ claims for damages related to these claims.

First and foremost, Plaintiffs seek recovery of damages based on lost-rental income. Mr. Miller testified that Bayou Rentals received the income from the short-term rental. (R. Doc. 69-9 at 6-8). Defendants argue, therefore, that Plaintiffs cannot claim lost rental income because “[i]t is well-settled Louisiana law that an individual, as a member or shareholder of an LLC, may not sue for damages resulting from damage to the LLC’s property.” *Wallace v. AeroPremier Jet Ctr., LLC*, No. 10-1136, 2010 WL 3081370, at *2 (E.D. La. Aug. 5, 2010) (citing La. Rev. Stat. § 12.1329). Mr. Miller submitted a declaration, however, providing that Bayou Rentals is a limited liability company formed “to protect against personal liability for any damage suffered by a

guest while staying at the [short-term rental] property," Bayou Rentals has no ownership interest in the property, that Airbnb issues him a tax form 1099-K for the money paid throughout the year for the rentals, and that Plaintiffs file personal income taxes with a Schedule C accounting for the profit and loss from the short-term rental. (R. Doc. 82-11). Given the foregoing, there is a genuine dispute regarding whether Plaintiffs are entitled to recover for damages of lost rental income.[12]

While there is no dispute that any ruts caused by the hot-shot workers have resolved naturally over time, that fact would not preclude Plaintiffs from recovery regarding temporary physical damage caused to their property by the ruts.

Finally, Plaintiffs have set forth sufficient summary judgment evidence for the purposes of demonstrating a genuine issue of material fact with respect to their recoverable damages, including mental anguish, distress, and inconvenience as a consequence of the alleged trespass by the hot-shot drivers:

> In an action for trespass, it is incumbent upon the plaintiff to show damages based on the result or the consequences of an injury flowing from the act of trespass. *Bell v. Sediment Removers, Inc.,* 479 So.2d 1078 (La. App. 3 Cir. 1985), *writ denied,* 481 So.2d 1350 (La. 1986). The damages must be proved by a preponderance of the evidence, and this burden of proof may be met by either direct or circumstantial evidence. *Id.* One who is wronged by a trespass may recover general damages suffered, including mental and physical pain, anguish, distress, and inconvenience. *Ard v. Samedan Oil Corp.,* 483 So.2d 925 (La. 1986). Mental anguish does not result of necessity from a trespass or the encroachment on a person's property; even though mental anguish may be compensable, it must be proven with sufficient evidence. *Bell,* 479 So.2d 1078. However, mental anguish does not require proof that medical or psychiatric care was required as a result of the incident, but minimal worry and inconvenience should not be compensated. *Phillips v. Town of Many,* 538 So.2d 745 (La. App. 3 Cir.1989).

*Harrington v. Abshire*, 732 So. 2d 677, 682 (La. App. 3rd Cir. 1999),

[12] Plaintiffs represent that they had lost $46,500 in rental income at the time they responded to discovery in this action. (R. Doc. 87 at 14).

Plaintiffs have provided summary judgment type evidence of separate and distinct instances of alleged trespass by Zodiak based upon separate acts or omissions by the hot-shot drivers in temporarily moving or parking the RVs on Plaintiffs' property (resulting in ruts), as well as leaving feces, urine, trash, ruts, and debris on Plaintiffs' property. (R. Doc. 82-18). Plaintiffs testified that they closed the short-term rental property in April 2024, and that it would take one month of work to get the property to rentable condition. (R. Doc. 82-3 at 17-21; R. Doc. 82-2 at 9, 16-19). Plaintiffs have asserted in their discovery responses that they suffered from increased anxiety, stress, and physical health problems in light of the situation. (R. Doc. 87 at 14). This is sufficient for the purposes of establishing a disputed fact with respect to damages.

## III. Conclusion

For the foregoing reasons,

**IT IS FURTHER ORDERED** that Optimum Dealership Group, LLC's Motion for Summary Judgment (R. Doc. 69) is **GRANTED**. Plaintiffs' claims against Optimum are **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED** that Zodiak Transportation Logistics & Solutions, LLC's Motion for Summary Judgment (R. Doc. 68) is **GRANTED IN PART and DENIED IN PART**. Plaintiffs' nuisance and custodial liability claims against Zodiak based are **DISMISSED WITH PREJUDICE.** Plaintiffs' trespass claims against Zodiak remain.

Signed in Baton Rouge, Louisiana, on September 24, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**